| 76 | 653 |
| 82 | 636 |
| 84 | 65 |

EAST TEXAS FIRE INSURANCE COMPANY v. L. & H. BLUM.

No. 2673.

**1. Insurance Broker.**—Glenn & Son wrote to Bridges, an insurance agent, asking additional insurance upon their merchandise, designating no company nor rate, but authorizing him to obtain a policy for them. These facts constituted Bridges the agent of the insured for the purpose of obtaining the policy. His agency by virtue of such authority extended no further than to obtain the policy.

**2. Same—Notice of Revoking Policy.**—In a policy reserving the right to cancel it on notice to the insured, such notice would be satisfied by personal notice to the insured or to an agent authorized to receive it. Notice, however, to the insurance broker with power only to obtain the policy is not sufficient. An agent to procure a contract has no power to discharge it implied merely from the original authority.

**3. Double Agency.**—A provision in an insurance policy may define the relation of one filling the double work for the party insured and the insurance company, so that as to the particular transaction he shall not be deemed the agent of the company.

**4. Agency in Obtaining an Insurance Policy.**—Glenn & Son wrote to Bridges, an insurance agent, to obtain an additional policy of insurance upon their stock of goods. The policy was obtained by a clerk of Bridges in his absence. It was obtained and delivered. The testimony of Bridges and of his clerk, the course of business, and all the attendant circumstances showing that Bridges was not the agent of the insurance company, clothed with any power of consenting to additional insurance, *held*, that the mere general declarations of Glenn & Son in evidence that Bridges was the agent do not rebut such testimony nor prove such agency.

**5. Promise to Consent.**—But if an agent, Bridges' promise to consent to additional insurance made long prior to the application would not bind the insurance company.

**6. Clause Against Additional Insurance.**—Where an insurance policy provides that if other insurance was obtained without the consent of the company the contract of insurance should cease, and additional insurance was obtained without such consent, the contract of insurance became void.

**7. "Total Concurrent Insurance, $4000"—Construction.**—To be *concurrent* the insurance must operate at the same time, upon the same property, and look to the indemnity of the insured in case of its loss or destruction from the casualty insured against. There being older policies to amount of $3000, if the clause "total concurrent insurance, $4000," imported an agreement, that sum with the policy sued on for $1000 rendered the consent for further insurance necessary. If the clause only recited the fact expressed in the words the same result would follow from the terms of the policy.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart.

This is an action by appellees on a policy of insurance issued to A. T. Glenn & Son by appellant on October 2, 1886, which was transferred to appellees after the destruction of the goods covered by it.

Glenn & Son did business at the town of Buffalo, and prior to the issuance of policy in question had obtained three policies on their stock of goods,

each for $1000.  These three polices had been obtained through E. L. Bridges and other fire insurance agents residing at Navasota and other places, who it seems had solicited the business of Glenn & Son.

T. L. McNair, after stating that he was a clerk in the office of Bridges, and not the agent of any insurance company, testified that "at or about the latter part of September, 1886, a letter was received at our agency from A. T. Glenn & Son, Buffalo, Texas, applying for $1000 additional insurance on their stock of merchandise.  Shortly after the receipt of this application I wrote to Lofland & Menard, of Galveston, Texas, for said insurance, and I think enclosed them a copy of Glenn & Son's previous application.  Several days after this our agency received a policy from Lofland & Menard for A. T. Glenn & Son in the East Texas Fire Insurance Company.  *  *  *  After the issuance of the said East Texas policy, there was additional insurance obtained on said merchandise by said Glenn & Son, and to explain my knowledge of the matter will state that on the evening of the night of the fire which consumed the stock of Glenn & Son a letter was received at our agency from said firm notifying us that they had taken out additional insurance in the National Insurance Company, of Salina, Kansas, to the amount of $1000 on stock.  I do not know the date of said National policy, nor where it was obtained.  The facts are that no consent of· the East Texas Insurance Company was obtained for such additional insurance, nor was said company notified previous to the time the fire occurred.  A. T. Glenn & Son wrote a letter in regard to such additional insurance in the National Insurance Company, of Salina, Kansas, and that letter was received at our agency on the evening of the night of the fire.  *  *  *  This letter was the first information we had, so far as I am aware, of this additional insurance."

On cross-examination the witness stated: "I was not the agent of the defendant company at, before, or after the issuance of the policy sued on. The premium on policy referred to was paid to my employer, E. L. Bridges, some time after the fire; don't know when or how.  *  *  *  The said policy was mailed to Glenn & Son from our office, Bridges being absent at the time.  Mr. Bridges being absent at the time when Glenn & Son's letter was received at our office, applying for the insurance, I applied to Lofland & Menard at Galveston for the insurance desired by Glenn & Son, and they forwarded to our office a policy in the East Texas Insurance Company, which I mailed to Glenn & Son at Buffalo, Texas.  We kept separate registers for the companies represented by Bridges as a commissioned agent, and also a general register in which is recorded copies of policies obtained by us in companies we do not represent as agent. *  *  *  All policies of the East Texas Fire Insurance Company sent to us were entered in our general register."

Having received information that Lofland & Menard, who were the agents at Galveston of appellant company, had issued the policy sued on,

the company wrote to them on October 4, 1886, declining the risk on several grounds, one of which was that the agents of the company for the territory within which the insured property was situated were Anderson & Robertson, for whom only policies would be there written.

By the terms of the policy the company had the right to cancel it, and on receipt of its letter Lofland & Menard, on October 5, 1886, wrote to Bridges asking him to take up the policy and return it. Bridges, by McNair, replied on October 7 that the policy had been sent for and would be returned as soon as received. McNair, continuing his testimony, said: "I will state that on receipt of Lofland & Menard's order to take up policy I did not notify Glenn & Son, but applied to Hughes & Stone at Galveston for a policy for Glenn & Son for the same amount, intending upon receipt of it to send it to Glenn & Son and ask them to return the East Texas policy, and the matter was in suspense at the time the fire occurred. I will state further that I did not have time to notify Glenn & Son that the East Texas desired to cancel their policy after Glenn & Son notified us of having taken out additional insurance, as I was notified by a telegram from Glenn & Son of the loss before the next mail.   *   *   *   The order of Lofland & Menard to take up this policy was by letter of date October 5, 1886."

E. L. Bridges, after stating that he was agent for four fire insurance companies named when policy was issued, testified as follows: "I first learned of the issuance of the policy of this defendant company which is now in suit after the burning of the property. After the fire my clerk informed me that on or about October 4, 1886, he received through the mail from Lofland & Menard   *   *   *   the policy; that on its receipt he forwarded it by mail to Glenn & Son, at Buffalo, Leon County, Texas. I left home several days before the fire and returned on Sunday, October 10, 1886. I learned that the policy had been received and forwarded by my clerk." He then produced the letter which induced his clerk to apply to Lofland & Menard for insurance. That was of date September 22, 1886, and simply sought $1000 additional insurance, but named no company in which it was desired. Continuing, he said: "I was not personally aware of the issuance of the East Texas policy until October 11, 1886. On October 11, 1886, I received a letter from Glenn & Son, dated Buffalo, October 7, 1886, addressed to me, which was as follows:

*   *   *   " 'We have to advise you that we have increased our insurance $1000 in the National Mutual, of Salina, Kansas, making total amount of insurance on stock of merchandise $5000.

" 'Yours truly,

" 'A. T. GLENN & SON.'

"I am not aware of any consent being given by the defendant company to the additional insurance above referred to. This letter before mentioned, of date October 7, 1886, and received by me on October 11, 1886,

after the fire, was the first information I had of such additional insurance."

This witness then produced a letter, of date October 11, 1886, from. Lofland & Menard, in which they acknowledge information from him by telegram of the loss sued on, which contained the following: "As to this last, we must acknowledge we do not understand how the East Texas. can be involved. We instructed you several days since to take up this. policy, and have your reply acknowledging receipt of said instructions. and saying that said policy should be returned to us. You, under same cover as above mentioned acknowledgment, returned to us the East Texas. policy on Pearlstone, for which we had sent you an Anglo-Nevada policy to· replace it, and which we had requested you to take up at same time we had the Glenn policy. * * * We embrace the first opportunity to write you in regard to this matter, and ask the question if you are not in error· in reporting the East Texas on this risk."

On cross-examination he stated: "I was not the agent of the defendant. company at or before the issuance of the policy of insurance sued upon. I did receive the premium upon said policy in this way (to explain), $1.50· was paid to me by Glenn & Son, and as nearly as I can recollect the balance ($50) was paid by draft of Glenn· & Son on L. & H. Blum, Galveston, Texas, on or about October 20, 1886. If the matter had been finally consummated by the company's acceptance of the premium I would have retained 15 per cent of the same as my perquisite."

He then stated the same facts in regard to keeping the registers stated by McNair, and that the entries of policies issued by defendant company were all made in the general register, which did not show the business. done with companies for which he was agent. "I did not know that the policy sued on was in existence till after the property was destroyed. I did not collect the premium till about October 20, 1886, which was subsequent to the fire. This premium, less exchange, was transmitted to· Lofland & Menard, of Galveston, Texas, and by them returned to me, at. which time I sent Glenn & Son $51.50, as the agents of the company declined to receive the money. * * * As to whether or not it is true. in regard to my knowledge of the intention of the East Texas Insurance Company to cancel their policy, will say that I did not know of the existence of said policy until October 11, 1886."

A. T. and S. G. Glenn, after testifying to the insurance held by them. and that the property was destroyed by fire on October 9, 1886, testified. as follows: "The circumstances under which the policy of the defendant. company was issued were as follows: A short time before the fire E. L. Bridges, of Navasota, Texas, was around soliciting insurance. We were. not ready at that time to take out more insurance, but told him, Bridges, that when we wanted more insurance we would write him, which Bridges. insisted on us doing, saying he would give us until November, 1886, to·

pay the premium.   E. L. Bridges was the agent of the defendant company in procuring the insurance.   The policy of the defendant company was received from E. L. Bridges a short time before the fire; don't remember exact dates.   The premium was paid a few days after the fire. We gave a check on L. & H. Blum for $50 and paid the balance in cash to Bridges.   No demand was ever made for payment of the premium until a few days after the fire, when Bridges came to Buffalo and told us that he wanted to get his hands clear of the matter and asked us to pay the premium before it was due, which we promptly did.   * * *   Bridges came to Buffalo after the fire, and told us at the time he made demand for the premium that he had received notice from defendant company to cancel their policy, and owing to his absence from home his clerk had neglected to cancel the East Texas policy and write us up in some other good company, and insisted on our paying the premiums as before stated. Some time after Bridges collected the premium he expressed it back to us and wrote us that the company would not receive it."

They denied having notice that the company had canceled the policy, and on account that they had not paid premium, and then continued: "As regards additional insurance Bridges told us when we wished to take out additional insurance to do so and notify him by letter, which we promptly did.   * * *   E. L. Bridges acted as the agent of the defendant company in the issuance of the policy by that company to us in insuring our stock of merchandise at Buffalo.   * * *   We do not remember the exact dates of the notice to Bridges, but we are positive we notified him as soon as we received the additional insurance in the National Mutual Insurance Company, of Salina, Kansas, as per instructions of Bridges to always notify him as soon as we received additional insurance.   There was $4000 of insurance on stock other than the $1000 in defendant company."

John Stubbs, cashier and corresponding clerk for Lofland & Menard, testified that "E. L. Bridges was never the agent of defendant's company at Galveston, Texas, or elsewhere, but was the agent of some other companies at Navasota, Texas, and at times would make application to Lofland & Menard for insurance upon property not carried by his companies.   Lofland & Menard would sometimes insure property upon such applications by him.   Under this arrangement we would write up and sign the policies and send them to Bridges.   We had nothing to do with the assured and did not know them in the matter.   When the premiums on such policies were paid we permitted Bridges to retain fifteen per cent, and the policy in question was issued under these circumstances.   As soon as we issued this policy, and on the same day, we reported it to the company at Tyler, Texas, and the company by letter dated October 4 instructed us to cancel this and some other policies then reported, which we accordingly did by letter of October 5 addressed to E. L. Bridges."

The policy contained the following provisions: "Total concurrent insurance, $4000." "This policy shall become void unless consent in writing is endorsed by the company thereon in each of the following instances, viz.:

"Sec. 1.    *    *    *

"Sec. 2.    If the assured have or shall hereafter obtain any other policy or agreement for insurance, whether valid or not, on the property above mentioned, or any part thereof.

"This company shall not be bound under this policy by any act of or statements made to or by any agent or other person, which is not contained in this policy or in any written paper above mentioned or attached thereto.

"If any broker or other person other than the assured have procured this policy, or any renewal thereof, or any endorsement thereon, he shall be deemed to be the agent of the assured, and not of this company, in any transaction relating to the insurance."

The policy was transferred to appellees on October 12, 1886.

Whether Lofland & Menard knew that there was $3000 insurance on the property when they issued the policy does not appear, but Bridges had knowledge of that fact.

The cause was tried without a jury, and although requested to do so, the judge failed to file conclusions of fact and law on which the judgment was based.

*Whitaker & Bonner, Davis & Davidson,* and *F. D. Minor,* for appellant. —1.    At the time of the issuance of the policy sued on there was other concurrent insurance on the property insured thereby to the extent of $3000, and appellant, by the words "total concurrent insurance, $4000," written on the policy at the time of its issuance, consented to other concurrent insurance thereon to the extent only of $3000, making the total insurance permitted by appellant on said property $4000, including the policy of appellant; and such was the understanding of appellant and the assured, as evidenced by said policy, the surrounding circumstances, and the actions and conduct of the parties to said policy.

By appellant's policy only $3000 other insurance, whether prior or subsequent, was permitted.    Berens v. Ins. Co., 58 Ia., 26; Mussey v. Ins. Co., 14 N. Y., 79; New Orleans Assn. v. Holberg, 1 So. Rep., 5.

Such being the understanding of the parties and their construction of the policy, the court will construe it in accordance with such understanding, in connection with the language used in the policy.    May on Ins., 2 ed., sec. 172; Watrous v. McKie, 54 Texas, 65; Reed v. Ins Co., 5 Otto, 65; Montgomery v. Ins. Co., 16 B. Mon., 427; Foot v. Life Ins. Co., 61 N. Y., 571.

2.    The evidence introduced by appellant as to the meaning of the

words "total concurrent insurance, $4000," as written in its policy, was admissible, such term being susceptible of a particular and definite meaning, and so construed and understood by appellant and those engaged in the insurance business generally. Mead v. Ins. Co., 7 N. Y., 530; Johnson v. Ins. Co., 39 Wis., 87; Ins. Co. v. Greene, 77 Ind., 595; Child v. Ins. Co., 3 Sandf., 26; Wall v. Ins. Co., 14 Barb., 383; Chawrand v. Angerstein, Peake N. P., 61.

3.   The policy issued by appellant only permitted $4000 insurance on the property, including the amount insured by appellant. The assured without the knowledge or consent of appellant having had or thereafter obtaining other and additional insurance on said property in the sum of $1000, appellant's policy by the terms thereof, became void. The information or notice given the said Bridges or his clerk, McNair, of such additional insurance, and at the time shown by the evidence, was no notice to appellant of such additional assurance; said Bridges not being the agent of appellant for receiving such notice or for any purpose relating to said insurance.   Melen v. Ins. Co., 17 N. Y., 609; Deems v. Ins. Co., 83 N. Y., 168; Mitchell v. Ins. Co., 51 Pa. St., 402.

*Scott & Levi,* for appellees.— 1.   The plea of appellant that the policy was canceled necessarily assumes that up to the time of cancellation the policy was in force, and there was no evidence to show that notice of cancellation was given as required by the policy until after the policy had become a money demand through the loss which happened while the policy was in force, and the court did not err in so holding.   May on Ins., sec. 145; Ins. Co. v. Wilkinson, 13 Wall., 234.

2.   The policy of insurance itself insuring the property for $1000 and having endorsed upon it permission for "total concurrent insurance, $4000," naturally means that "the entire insurance permitted by this policy is $5000, including this policy." It is susceptible of this interpretation, and even if any other can be placed upon it, yet this is to be adhered to as being most strongly against the appellant, whose language it is, and the court did not err in rendering judgment for appellees accordingly. See Insurance Company v. Wilkinson, *supra,* for full exposition of law in cases where companies seek to avail themselves of the benefits of an intermediary without assuming a corresponding responsibility. The court there pronounced it "a delusion and a snare."

3.   It was abundantly shown by the evidence that Glenn & Son dealt with and were by the acts of appellant justified in dealing with Bridges as appellant's agent in the matter of obtaining the policy sued upon and in paying the premium thereon; that Bridges was in fact the agent of appellant for the purposes of delivering the policy and collecting the premium thereon; and further, that Bridges as such agent was authorized to waive and did waive, and Glenn & Son were by appellant's acts

justified in believing that he was authorized to waive, the condition requiring prepayment of the premium, and the court did not err in rendering judgment for appellees accordingly. Miller v. Life Ins. Co., 12 Wall., 288.

STAYTON, CHIEF JUSTICE.—As the court below declined to file conclusions of fact and law, we can not know on what issue or issues the cause was decided.

It is contended for appellant that Bridges was the agent of the assured for all purposes, and that notice of cancellation to him was notice to them; while it is claimed for appellees that Bridges was the agent of appellant for all purposes.

In this contention no question is made whether the acts of McNair, the clerk of Bridges, and notice to him are to be deemed as binding on each party as though his act was the act of Bridges, and notice to him as fully binding as would have been actual notice to Bridges.

We are of opinion that the claims of neither party in their entirety can be sustained, but that in some respects Bridges, if we assume that he and his clerk are to be treated as one, was the agent of each.

In making application to him for insurance he was not treated by Glenn & Son as the agent of appellant.

They wrote to him asking insurance, but designated no company in which they desired it, nor did they fix rates with him, but they did empower him to obtain a policy for them.

In so far as he acted in doing this he must be treated as the agent of the assured. He was essentially an insurance broker.

In Oil Company v. Insurance Company, 64 New York, 85, it was held that such a broker may be regarded by the insurer as clothed with full authority to act for his principal in procuring, modifying, or canceling a policy obtained through him, and that his acts in these respects are binding on his principal.

The broker in that case seems to have had entire control of the oil company's insurance business, with power to place and keep upon its property a large line of insurance.

In a more recent case the same court held that the authority of a broker who is not a general agent to place and manage insurance on his principal's property, but is specially employed to procure insurance on certain property, terminates with the procurement of the policy, and that no authority to discharge the contract could be implied from the original employment. Herman v. Ins. Co., 100 N. Y., 411.

That case in some of its facts was very similar to the present. In disposing of the case the court said: "The defendant reserved the right to cancel the policy on notice to the insured. This condition would be satisfied by personal notice to the plaintiff or to an agent authorized

to receive it. But the authority of a broker employed to procure insurance for his principal, such broker not being a general agent to place and manage insurance on his principal's property, terminates with the procurement of the policy. It can not in reason be held to continue after the insurance has been procured and the policy has been delivered to the principal. An agent to procure a contract has no power to discharge it implied from the original authority merely. If he possesses that power it arises from some actual or apparent authority superadded to the mere power to enter into the contract.

"In this case the brokers had no general authority to represent the plaintiff in all matters relating to the insurance as did the agents in the case of Standard Oil Company v. Triumph Insurance Company, 64 New York, 85; nor had they any apparent authority to accept notice of cancellation. * * * The defendant relies upon a special clause in the policy which declares that 'it is a part of this contract that any person other than the assured who may have procured this insurance to be taken by this company shall be deemed the agent of the assured named in the policy, and not of this company under any circumstances whatever relating to this insurance.' This clause was primarily intended, no doubt, to define the relation of the insured to a person who applied for and procured the insurance in a case where the same person was also agent for the insurer in taking risks and soliciting insurance; or, in other words, in a case of double agency. The obvious meaning of the clause is that the person procuring the insurance shall, in respect to that matter, be deemed the agent of the insurer, whatever his relation to the company in other respects may be, and that in any transaction in respect to the particular insurance he shall not be deemed the agent of the company by reason of any such relations."

This last case seems to us to establish the rule consonant with reason as well as authority. Grace v. Ins. Co., 109 U. S. 278; Ins. Co. v. Hartwell, 100 Ind., 566; Deems v. Ins. Co., 83 N. Y., 169; White v. Ins. Co., 120 Mass., 333.

The case of Insurance Company v. Reynolds, 36 Michigan, 504, was in its facts much like the case of Oil Company v. Insurance Company, above cited, and practically the same ruling was made.

We hold that Bridges was the agent of assured to procure the policy, but that with its procurement his agency ceased; hence notice of cancellation given to him was not notice to assured.

The next question is, how far was he the agent of the insurance company? There is nothing in the entire record from which it can be held that he was the agent of the insurance company for any purpose other than to receive and remit the premium. So far as between the company and himself, the duty to do this would be implied from the facts. There can be no reasonable claim that he had power to issue a policy or to con-

sent to further insurance. The want of such power compelled him, as agent for the assured, to apply for a policy to those who apparently had such power. His own testimony, that of his clerk, the course of business, and all the attendant circumstances show that he was not the agent of the company clothed with any such power as was requisite to the giving of consent to additional insurance.

The broad declarations of the assured that he was agent, unsustained by a single fact tending to show their means of information or the grounds for their declarations, can not be given weight against overwhelming facts. He knew not of the existence of the policy until after the property had been destroyed, and there can be no pretense that he, or even his clerk, gave consent in any manner to additional insurance after the policy issued.

Had he been agent of the company at the time it is claimed that he promised to permit further insurance, it could not be held that such a promise made long before the policy issued would bind the company.

At the time it is claimed that promise was made assured held policies for not more than $3000, and then the company or any authorized agent might be willing to consent to additional insurance, which would not be consented to after the additional insurance given by the policy in question existed.

Whether consent to additional insurance would be given would depend on the insurance and value of stock existing when consent to additional insurance was asked.

The policy provided that if other insurance was obtained without consent of the company the contract of insurance should cease.

Additional insurance was obtained without the consent of the company, and in accordance with its terms the policy became void, unless the insertion in the policy of the words "total concurrent insurance, $4000," gave to the assured the right to procure other insurance without further consent of the company.

These words are detached from every other part of the policy, and are not used in any connection which illustrates clearly the purpose of their insertion.

In view of the provision in the policy that it should become void "if the assured have or shall hereafter obtain any other policy or agreement for insurance, whether valid or not, on the property above mentioned or any part thereof," unless consent thereto was given and evidenced in the manner provided, they may have been inserted for the purpose of determining that the procurement of insurance in excess of $4000 without consent was a breach of the policy—to determine what within the intent of the parties should be deemed other insurance.

That view receives support from the fact that with the policy in ques-

tion Glenn & Son had, when it was issued, policies covering the sum named.

It seems to be contended by appellant that these words limited the total insurance to $4000, unless consent to additional insurance was expressly given, and by appellees that these words gave Glenn & Son the right to take out policies to the extent of $5000 without consent of appellant.

If the words evidence any agreement at all, or are to be given any effect, then it becomes necessary to construe them.

If they are used for the purpose of limiting the right of assured, with or without consent, to procure other insurance, what do they mean?

The word "total" means "all," "the whole," which in sum is $4000. This sum, however, must be made up of insurance *concurrent.* The word "concurrent" means literally "running together," and in the connection here used has the sense of "co-operating," "contributing to the same event" (Worcester); "acting in conjunction, agreeing in the same act, contributing to the same event, co-operating, accompanying" (Webster).

In the absence of something in the context showing that the word was not used in its ordinary sense, it must be understood so to have been used, and nothing of that kind is found. To be concurrent the insurance must operate at the same time, upon the same property, and look to the indemnity of the insured in case of its loss or destruction from casualty insured against.

The three policies held by Glenn & Son amounting to $3000 were concurrent with the policy sued on, and with it made total concurrent insurance $4000; and that subsequently obtained, if all the policies are permitted to stand, would give total concurrent insurance $5000.

From this it follows that if the words evidence an agreement and do not simply declare a fact, it was necessary the consent of the company to subsequent insurance should have been obtained. If they were used simply to declare that the policy in question, with others existing, gave $4000 insurance on the property recognized to be valid, the same result follows.

Some other questions unnecessary to discuss are presented, but looking to the case made, the want of consent to insurance obtained after the policy sued on was issued required a judgment for appellant.

The judgment will therefore be reversed, and judgment here rendered for appellant.

It is so ordered.

*Reversed and rendered.*

Delivered March 28, 1890.