DALTON v. NORWICH UNION FIRE INS.
SOC. (No. 74–2840.)

(Commission of Appeals of Texas, Section A.
June 21, 1919.)

1. INSURANCE ⟐129—FIRE INSURANCE—AU-
THORITY OF AGENTS—BINDING MEMORAN-
DUM.

Local insurance agents have authority, upon
a request by an insured for further fire insur-
ance, to obligate their principals by entering
a binding memorandum for further insurance,
where they would have had authority to place
such insurance with the principal forthwith.

2. INSURANCE ⟐132—FIRE INSURANCE—AU-
THORITY OF AGENTS—BINDING MEMORAN-
DUM.

Where local fire insurance agents have
agreed to keep certain property insured and
have entered a memorandum on their books
binding one company, they may, prior to loss,
upon the cancellation of the first agreement,
bind another company by a subsequent binder
entry.

3. INSURANCE ⟐112—FIRE INSURANCE—AU-
THORITY OF AGENTS—RATIFICATION.

Where a contract is made by fire insurance
agents to keep certain property insured, the
owner need not subsequently ratify such insur-
ance.

4. INSURANCE ⟐148 — FIRE INSURANCE —
BINDER ENTRIES—CONSTRUCTION.

A contract of fire insurance executed by the
entry of a binder memorandum by local agents
must be construed in accordance with the terms
and subject to the conditions of the standard
form of policy in use by the insurer at the
time.

5. INSURANCE ⟐229(4)—FIRE INSURANCE—
CANCELLATION NOTICE—WAIVER.

The five-day cancellation notice in standard
fire policy, being for the benefit of the insured,
may be waived by him through agent who has
contracted to keep him insured, by accepting
notice of cancellation from the company and sub-
stituting other insurance before the expiration
of the five days.

Error to Court of Civil Appeals of Third
Supreme Judicial District.

Action by Crate Dalton against the Nor-
wich Union Fire Insurance Society. Judg-
ment for plaintiff was reversed by the Court
of Civil Appeals (175 S. W. 459) and plaintiff
brings error. Judgment of Court of Civil Ap-
peals reversed, and judgment of trial court
affirmed.

Witt & Saunders and Williams & Williams,
all of Waco (Locke & Locke, of Dallas, of
counsel), for plaintiff in error.

Thompson, Knight, Baker & Harris, of Dal-
las, for defendant in error.

TAYLOR, J. This suit was filed by Crate
Dalton, plaintiff in error, against the Nor-

wich Union Fire Insurance Society, defendant
in error, to recover upon a loss by fire under
an alleged insurance contract. The case was
tried before a jury, and resulted in a judg-
ment for the plaintiff. Upon appeal, the
Court of Civil Appeals by its final order re-
versed the judgment and remanded the cause
for a new trial. 175 S. W. 459.

The Court of Civil Appeals made findings
of fact, of which the following is a substan-
tial statement: Friedlander and Ludde were
local agents in Waco of several fire insurance
companies, including the Georgia Home In-
surance Company, the North British & Mer-
cantile Company, and defendant in error.
The policy form used by all of said companies
was the standard form of policy prescribed
by the insurance commissioner of Texas. On
November 6, 1912, Dalton phoned said agents
that he had sold the Sanitarium Building in
Waco to George S. McGee, and that the deed
conveying same had been placed in escrow.
He requested $5,000 additional insurance, in
favor of said McGee as owner and of himself
as mortgagee, on said property. The insur-
ance was to be kept effective while the deal
was pending, and policies were to be issued
upon its consummation when final data could
be furnished. Dalton was advised that his
request would be granted and immediately an
office memorandum called a binder, was made
out and entered in a book kept for such en-
tries, designating the said North British and
Georgia Home Companies as carriers of the
risk. The agents at the same time addressed
a letter to the general agents of the compa-
nies, advising them of the entry of the binder
obligating each company in the sum of $2,500.
On the following day, Dalton advised Fried-
lander that the sale of the property had not
been consummated, and requested that he keep
him and McGee protected until final data for
writing the policy could be furnished upon
completion of the sale. This Friedlander
agreed to do. On November 11th, about 2
o'clock p. m., the local agents were instruct-
ed by the North British Company to cancel
its binder covering the property. They com-
plied by drawing a pencil mark through the
name of the company on the binder, and in-
serting in lieu thereof the Norwich Union
Company. The same day they wrote the
North British of its release, and the Norwich
Union that it was bound for $2,500 on the
risk. Dalton did not know what companies
were selected, and knew nothing of the re-
quest for cancellation, or of the substitution.
The extent of his knowledge was that the
agents accepted his proffered risk, and fur-
ther agreed to keep the property insured
pending the sale. About 9 o'clock p. m. of the
day of the substitution, the property was de-
stroyed by fire. The next day Friedlander
and Ludde wired the general agents of the
Norwich Union that the property had been

destroyed. The telegram notifying the company of the loss was received by the general agents before they received the letter advising of the entry of the binder. On November 14th, the local agents issued the Norwich Union policy for $2,500, dating the same November 11th. Two days later they received a letter from the general agents, requesting them not to deliver it. On the same day, upon receipt of the premium from Dalton, the local agents remitted same to the general agents, who declined to receive it. Dalton testified that he was not claiming the insurance against both the North British and defendant in error companies.

The statement of facts discloses that the general agents of the defendant in error, on the day after they received the telegram announcing the loss, wrote Messrs. Friedlander and Ludde, advising that they did not receive notice of the binder until that day. The following is the concluding statement of the letter:

"Had we received this binder before the fire occurred we should have wired you to cancel it."

The policy form referred to contains the following stipulation:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation."

The commission which the local agents held from the defendant in error constitutes them agents of that company, with full power, among other things, to issue, renew, and consent to transfer of policies and make indorsements thereon, subject to the rules and regulations of the company as from time to time given by its officers. No rules or regulations are in evidence restricting the authority thus given.

The Court of Civil Appeals upon original hearing reversed the case, and rendered judgment in favor of the Norwich Union Company, upon the ground that the agents had no authority to cancel the North British binder and bind defendant in error in lieu thereof, without the knowledge or consent of Dalton, and upon the further ground that Dalton could not ratify such substitution after the fire. A motion for rehearing was filed, calling attention to the testimony of Mr. Friedlander to the effect that in making said cancellation and substitution the custom of all insurance offices was followed. The court, assuming that the jury found that Friedlander and Ludde, following such custom, were authorized to make the substitution, granted the motion, and directed that the judgment of the trial court be affirmed. At a later date an order was entered reversing and remanding the cause, upon the theory that no reference to the custom of insurance agents is made in the pleadings.

Under our view, the case does not turn upon the question of assured's consent to the substitution of the defendant in error upon the risk in lieu of the North British Company, or upon his ratification of such substitution thereafter, or upon his ratification of the issuance of the policy, but upon whether said substitution created a binding contract of insurance.

[1, 2] Dalton requested $5,000 additional fire insurance coverage upon his property. The local agents, of whom the request was made, having authority to place such insurance forthwith in the defendant in error company, had authority also to obligate the defendant in error by entering on their books the said binding memorandum. R. C. L. 881; Amer. & Eng. Ann. Cases 1914C, p. 727. In addition to their general authority as agents, there is distinct recognition of their authority to enter the binder obligating the defendant in error in the statement of its general agents quoted from their letter. The local agents had agreed to keep the property protected. Dalton did not designate any company as insurer. He intrusted the selection to Friedlander & Ludde. They placed the insurance with the North British and the Georgia Home Companies in equal amounts. It is unquestioned that they were authorized to bind originally any of the companies they represented. They could have obligated the defendant in error in the first place with the Georgia Home. Having such authority in the first place, they had authority also to obligate it by subsequent binder entry before the fire. We can conceive of no reason why the contract as subsequently made by the change on the binder was not as effective as it would have been had it been made by the original binder.

[3] It is not necessary to determine whether Dalton was authorized to ratify the contract of insurance after the fire. The facts are such as to constitute Friedlander and Ludde his agents to keep him protected by insurance as requested. Diamond v. Duncan, 107 Tex. 256, 172 S. W. 1100, 177 S. W. 955; Farrar v. Western Insurance Co. (Cal. App.) 159 Pac. 609. When a contract is made by agents to insure and keep insured certain property, there is no necessity for a subsequent ratification. The insurance contract is complete when the risk under such circumstances is proffered, accepted, and covered.

[4] A contract so made is to be construed in accordance with the terms and subject to the conditions of the standard form of policy in use by the insurer at the time. Joyce on Insurance, vol. 1, § 65; Amer. & Eng. Ann. Cas. 1914C, p. 730; this case, 175 S. W. 461; Lipman v. Ins. Co., 121 N. Y. 454, 24 N. E. 699, 8 L. R. A. 719.

[5] The five days' provision of the cancellation notice clause of the standard form policy is for the benefit of the insured, and may

be waived by him through his agent who has contracted to keep him insured. ·An agent who is not only authorized to procure the insurance, but keep the property insured, may accept notice of cancellation, and substitute therefor other insurance, without waiting for the expiration of the five days. Hollywood' Lumber & Coal Co. et al. v. DuBuque & Marine Insurance Co., and cases and authorities there cited, 80.W. Va. 604, 92 S. E. 858.

We are of opinion that the plaintiff in error was· entitled to recover upon his contract made with the defendant in error through its local agents, evidenced by the binder memorandum as it existed at the time of the fire.

We recommend, therefore, that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.