GREAT AMERICAN INS. CO. v. D. W. RAY & SON. (No. 1186—5184.)

Commission of Appeals of Texas, Section A.
March 20, 1929.

Will C. Thompson and Thompson, Knight, Baker & Harris, all of Dallas, for plaintiff in error.

Lawrence Treadwell and Richard & A. P. Mays, all of Corsicana, for defendant in error.

NICKELS, J. Judgment for the insured was affirmed by the Court of Civil Appeals. 4 S.W.(2d) 88. For a general statement of the case we make reference to the opinion of that court. Writ of error was allowed upon assignments presenting matters to be noticed.

1. Sheppard became "manager" or "agent," at Kerens, of the insurer in March, 1920, and continued as such until some time after issuance of the policy in question. The company, through its "special agent or State agent," "checked him in," and "then gave him instructions with reference to what property they did not write." Those instructions were: "This company does not write farm property." Sheppard testified that he "never did receive any other instructions with reference to that, either orally or otherwise." If Sheppard's statement just quoted does not inevitably mean that the class of property not to be written was never enlarged, a trier of fact issues might give it that meaning. Scott v. Townsend, 106 Tex. 322, 341, 166 S. W. 1138; Craycroft v. Crawford (Tex. Com. App.) 285 S. W. 275, 280. In "checking Sheppard in," the company put into his custody supplies, forms, etc., and, inferably, kept him supplied as needed. The form of policy used in the present instance has many clauses, provisions, etc., appropriate only in taking cotton gin risks. As delivered to Ray & Son, the policy bore the signature of "O. G. Smith, President," and "E. M. Cragin, Secretary," of the company, plus the counter signature of "Joe Sheppard, Manager or Agent," at Kerens. The signatures of the president and secretary were on the paper, and the paper was in Sheppard's possession at Kerens at the time he filled in the "blanks," and inferably contained references to and blanks for cotton gin risks. In the absence of proof showing the policy form (as furnished to Sheppard) did not have such references, etc., the assumption must be against the insurer, for it seeks to impose such restrictions upon his authority as "Manager or Agent."

There is testimony from a representative of the company to the effect that Sheppard was instructed not to "write gins"; but Sheppard denied the truth thereof. And there is testimony from another representative that a letter containing such instructions was written to Sheppard, but the letter was not shown to have been mailed, and Sheppard denied receiving it. And there is testimony from a representative in New York that the company did not write gins, but, except as shown, attempts to communicate that fact to Sheppard do not appear.

In the situation presented, we cannot say there is no evidence of sufficient agency or that usurpation of authority by Sheppard is conclusively shown. The defense of lack of actual authority is not sustained.

2. The premium was paid by, and the policy actually delivered to, the insured before the fire occurred. The policy thereafter remained in actual custody of the insured. But it is claimed the purported contract never became effective. The claim rests in these facts: (a) Sheppard, since 1920, had represented this company and other insurers at Kerens. (b) From time to time Ray & Son had procured insurance through him. (c) "Mr. Ray," apparently representing the insured, a corporation, had told Sheppard "that whenever he had a policy to expire to always keep him covered in good companies." (d) A policy, or policies in a group, expired in October or November, 1925; those policies did not include one issued by Great American Insurance Company. (e) Sheppard issued, apparently to the extent of countersigning, policies of various companies, not including Great American Insurance Company, to take the places of those expiring. None of these had been delivered to Ray & Son on December 1, 1925. (f) Amongst the policies just mentioned was one of the Royal Insurance Company for $5,000. Pursuant to communications intimate to Sheppard and Royal Insurance Company, Sheppard, on November 28, 1925, marked this policy "cancelled" and sent it to the Company." (g) The instant policy was then countersigned by Sheppard and on December 1 or 2, 1925, it, with the others, was delivered to Ray & Son. As affecting the claim, it ought to be remembered that Ray & Son accepted this policy, kept it, and thereafter stood (and now stand) upon it.

Contents of the Royal Insurance Com-

pany's policy are not disclosed. That policy may have included provisions for "cancellation" in the exact manner adopted; proof of absence of such a stipulation is not before us. If Sheppard (justifiably) was agent of the insured and insurer in issuance of the policy (that is to say, agent of the insurer in delivery and agent of the insured in acceptance), such a stipulation as that mentioned would inure to the benefit of the insurer and be obligatory upon the insured, with the result that cancellation, so long as the policy remained in his possession, could be worked out without consultation with Ray & Son. The matter is one in respect to which the burden of proof lay upon the insurer; in deference to the judgment, as well as in recognition of the presumption of good faith, etc., we assume existence of such a stipulation, in the Royal policy, as, in the circumstances, warranted "cancellation" in the manner pursued.

█ Again, if Sheppard's authority to represent Ray & Son had the general scope claimed by them, it included authority to cancel. East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 13 S. W. 572. If his authority was anything less than that just mentioned, then, on the proof of the delegation and proof of practical interpretation of the delegation, it was to procure policies which, upon delivery to and acceptance by Ray & Son, evidenced the contracts of insurance. Alliance Ins. Co. v. Continental Gin Co. (Tex. Com. App.) 285 S. W. 257. On this point, the matter is not controlled by Dalton v. Norwich Union Fire Ins. Ass'n (Tex. Com. App.) 213 S. W. 230, since the insured has not elected to stand upon the agent's conduct (issuance of Royal policy) which was unknown to it; and, if it be said that Ray & Son have undertaken to ratify Sheppard's conduct in issuing the Royal policy, then, by the same measure, they have undertaken to ratify his conduct in canceling it.

█ A ruling of effectiveness in the Great American policy, it is said, conflicts with that in Alliance Ins. Co. v. Continental Gin Co., supra. But in that case the policies which, it was held, never took effect, were not delivered, prior to the fire, to the insured and were not intended, even by the insurer as represented by its local agent, to be effective until and unless policies then outstanding were canceled, which contingency might not occur except upon notice, etc., to the insured otherwise than by notice to the alleged joint agent.

In our opinion the Great American policy took effect upon its delivery to Ray & Son.

█ 3. The policy includes a stipulation that "the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice * * * and satisfactory proof of loss have been received by this company," etc. The stipulation, along with the balance of the policy, was introduced in evidence by Ray & Son.

In their petition, Ray & Son averred that total loss occurred on December 3, 1925, that on February 26, 1926, "proof of the fire and loss" and demand for "payment of the sum insured for" were made, and that "by reason of the premises" the company "became justly indebted * * * the full sum of $5,000.00." In immediate context it was charged that the company "has ever failed and refused and still fails and refuses to pay."

Date of "demand" is fixed in the pleading, it will be noted, as February 26, 1926. Mr. Ray, representing the insured, testified to the fact of demand having been made, but did not fix the date of same, nor is there other testimony fixing the date; hence we allocate the demand testified about to the demand averred on February 26, 1926. Mr. Ray said "they" (i. e., the insurer) "have never admitted their liability or denied their liability, just refused to pay." Since date of refusal is not otherwise shown, we assume it followed the demand made February 26, 1926. And since, according to the stipulation, the insurer had the right to "fail and refuse" to pay until expiration of "sixty days after" receipt of "proof of loss," we regard the refusal to pay as ripening into denial of liability at the end of April 26, 1926. Interest began to accrue, in our opinion, April 27, 1926. Delaware, U. & W. Fire Ins. Co. v. Brock, 109 Tex. 425, 431, 432, 211 S. W. 779. Interest was allowed from February 3, 1926 (that is, from "sixty days after" the fire), and the allowance was upheld by the Court of Civil Appeals. In this we think there was error.

There is to be found in Northern Assurance Co. v. Morrison (Tex. Civ. App.) 162 S. W. 411, 412, language which, considered of itself, appears to be in conflict with expressions in Delaware U. & W. Fire Ins. Co. v. Brock, supra; yet the relevant decisions may have reconciliation in the fact stated that, "when notice of loss" was given to Northern Assurance Company, "liability on the policy was denied," and the fact, inferable, that such notice was given immediately after the fire. We understand the last paragraph of the opinion in Camden Fire Ins. Ass'n v. Bomar (Tex. Civ. App.) 176 S. W. 156, 157, as being grounded upon the fact of denial of liability made immediately after loss. Thus considered, Northern Assur. Co. v. Morrision and Camden Fire Ins. Ass'n v. Bomar do not support the ruling of the Court of Civil Appeals.

4. In the charge, the jury was required to find, separately, the "value * * * at time of fire" and the "fire damage" in respect to each of eight "items." In respect to an "item" described as "motors, dynamos and other electrical equipment used for power, while contained in buildings on * * * premises," the jury found the "value" and the "fire damage" each to have been $2,250. Another "item" was described as "metal tanks and towers situated on gin premises," and

"value" and "fire damage" each was found to have been $800. Another item was described as "a one-story, frame cotton-seed house, including unloading machinery therein, with metal roof, situated 27 feet south" from the main gin building, "including motor," and the "value" and "fire damage" each was found to have been $1,800. The insurer claims the findings are without support of "any evidence."

. The contention in respect to "motors, dynamos," etc., and "metal tanks and towers" rests on statements in the "proof of loss" executed by the insured and used as basis for same testimony introduced by it. Therein it is said that the "cash value" of "Motors & Dynamos," in "condition burned" was $1,-859.62 and that the "loss" was $1,859.62. Therein it is said "metal tanks and towers damage" amounted to $232.95.

The policy apparently was prepared by Sheppard and delivered to the insured on December 1st or 2d, one or two days before the fire. In the policy, introduced in evidence by the insured, there are declarations of "cash value estimated by applicant" (i. e., Ray & Son) and which "estimates" in the circumstances might be taken as having been made or approved by Sheppard, agent of the insurer. Therein the "cash value" of "motors, dynamos," etc., is shown to have been $2,250, as compared with $1,859.62 stated in the "proof of loss," and the "cash value" of "metal tanks and towers" is shown to have been $800.

The statement in "proof of loss" and the jury's finding in respect to "motors, dynamos," etc., both rest upon the fact or assumption of total loss, and the "proof of loss" statement, at least when supported, as it is, by corroborating inferences from Ray's testimony, is some evidence of total loss. Hence we have a case of two estimates of value—one made in the policy a day or two before the fire, and one made in the "proof of loss" some 83 days after the fire—conflicting to the extent noted. It cannot be said that either is wholly without probative force, and that therefore the jury's finding is without "any evidence."

In respect to "metal tanks and towers," the statement in the "proof of loss" might signify, of itself, either that there was total loss with a value of $232.95, or that there was but a partial loss and to the extent of $232.95. If the meaning first indicated be taken, then there is but conflict of estimates of value as in the case of "motors, dynamos," etc., discussed above. If the secondly indicated meaning be taken, there is not necessarily a conflict in estimates of value, but on the record there is a conflict of evidence as between the "proof of loss," on the one hand, and testimony of the witness Ray, on the other, to the effect that "metal tanks and towers on the premises" "above the gin room" and "their foundation burned and they fell

in and were destroyed." The fact that Ray, in one connection, confirmed statements in the "proof of loss" and said that it showed all of the losses, etc., did not take from the jury the right to consider his formerly given testimony about "destruction" of the tanks and towers. Stevenson v. Barrow (Tex. Com. App.) 291 S. W. 1101.

The policy schedule has an item, "one story frame cotton house, including unloading machinery therein, with metal roof, situated 27 feet south from the above described building" (i. e., the main gin building "including motor," "cash value estimated * * * $1,-800.00"). The amount of insurance allotted to that building is $1,200. The "item" is pleaded by insured with the description given in the policy. In the charge to the jury, the "item" is described, except for omission of amount of insurance and estimated value, exactly as in the policy and in the petition, save that the words "cotton seed house" are used for the words "cotton house." In a preliminary statement in the charge, it is stated that each "item" thereinafter set out is a description of "property insured." Cotton seed houses are separately dealt with in the policy schedule, pleading, and charge. We treat the findings of $1,800, "fire damage," which, in the circumstances, is a finding of "total loss," as having reference to the "cotton house" described in the policy and pleading.

In the "proof of loss" there is no reference to the "cotton house" as having been destroyed or damaged. That statement purports to exhibit a complete showing of losses. Mr. Ray, who assisted in its preparation, had the "proof of loss" before him while testifying and made specific reference to each "loss" therein shown. In that immediate connection he said, "That is all of it, the aggregate loss was $31,262.75" (same total shown in the "proof of loss"); "those figures represent the reasonable damage to the plant by reason of the fire." The only reference to damage to a "cotton house" is to be found in testimony of Mr. Ray, given in another connection, that "there was a frame cotton house * * * it was just scorched, it did not burn"; it is questionable whether that testimony has reference to the "cotton house" described in the policy, but if it has such reference it does not tend to show $1,800 "fire damage" which would have been a "total loss."

The insurer's contention on this finding of $1,800 "fire damages" must be sustained. Yet, because of the independent nature of the "item" in the policy and in the verdict, and because the other findings are sufficient for the judgment, as pointed out in "5" below, the error is not a reversible one. J. M. Guffey Petroleum Co. v. Dinwiddie (Tex. Civ. App.) 182 S. W. 444, 446 (writ denied); Baker v. Streater (Tex. Civ. App.) 221 S. W. 1039, 1042.

5. Of losses, exclusive of the "cotton house" item of $1,800, established in the ver-

dict the part chargeable to this insurer under the three-fourths and concurrent insurance provisions, amounts to the sum of $4,472.94. If the $1,800 "cotton house" item be taken into consideration, then the proportion of loss which should be charged to this insurer is $4,743.34. Recovery was allowed in the sum of $4,309.71. The insurer presents lack of authority in the trial judge to render judgment except for the amount to which the insured would appear to be entitled under accurate mathematical calculations on the face of the verdict as a whole. If this be true, the judgment should have been for $4,743.34.

To each of the various "items" of property covered a definite portion of the aggregated insurance is in the policy allotted; e. g., $260 of the $5,000 is by the policy, applied to the facts of concurrent insurance, etc., allotted to the "cotton house." The verdict, under instructions of the judge, was so drawn as to establish separately the "value" and the "fire damage" of each item thus segregated in the policy and in respect to which loss was claimed by the insured. The verdict, then, is made up of a series of independent findings. One of the findings (i. e., that in respect to the "cotton house") is without warrant in proof; but, in the others, separately considered or taken together, the judgment rendered has support. The fact that a judgment including an additional $163.23 in favor of the insured might have been rendered, and, as rendered, supported, on the findings, independent of the finding in respect to the "cotton house," did not, in our opinion, preclude the lesser judgment, rendered as it was with consent of the insured. In case of a special verdict not set aside, the statute requires judgment "thereon." Article 2209, R. S. 1925. A judgment which is "thereon" as far as it goes and which merely falls short of allowing a consenting party all of the relief to which he is entitled according to the verdict as a whole or according to those independent findings in it whose valid existence cannot be successfully challenged, is, in our opinion, a judgment "on" the verdict within the meaning of article 2209; nor may a party raise a question, under article 2211, R. S. 1925, about failure to give his adversary "all the relief to which he may be entitled." United Producers' Pipe Line Co. v. Lantry-Fike Const. Co. (Tex. Civ. App.) 238 S. W. 331.

6. We recommend that the judgment of the district court be so reformed as to allow interest on the principal amount ($4,309.71) allowed therein from the 27th day of April, 1926, that the judgment of affirmance of the Court of Civil Appeals be reformed accordingly, and that, as thus reformed, the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reformed and affirmed, as recommended by the Commission of Appeals.