**EQUITABLE GENERAL INSURANCE COMPANY, et al., Appellants,**

v.

**COURTESY PONTIAC, INC., Appellee.**

No. 12–85–0189–CV.

Court of Appeals of Texas, Tyler.

Dec. 19, 1986.

Rehearing Denied Jan. 15, 1987.

P. Michael Jung, John H. Marks, Jr., Strasburger & Price, Dallas, for appellants.

Marshall M. Searcy, Rain, Harrell, Emery, Young & Doke, Dallas, Lynn S. Patton, Longview, Dennis Black, Ramey Firm, Tyler, for appellee.

COLLEY, Justice.

Courtesy Pontiac, Inc. (Courtesy), plaintiff/appellee, sued Equitable General Insurance Company and Houston General Insurance Company, defendants/appellants (hereafter referred to as Houston General), on an excess limits (umbrella) liability policy to recover monies paid by Courtesy to a third party in settlement of a products liability suit.[1] The trial judge signed and rendered a judgment for Courtesy against Houston General in the sum of $100,000, plus attorney's fees and interest. We affirm the judgment.

The record reveals that in February 1976, Mary Ann Caruth Reece purchased a 1974 Volkswagen from Tyler Lincoln-Mercury, Inc. On May 11, 1976, the Volkswagen overturned several times and Reece sustained serious injuries in the incident. She sued Tyler Lincoln Mercury and Courtesy on theories of strict liability, alleging a defect in the Volkswagen, and negligence. At the time of the incident, Courtesy was the insured under a garage liability policy issued by Liberty Mutual Insurance Company. The policy provided bodily injury liability coverage with liability limits of $100,000 for each person and $300,000 for each occurrence. The Reece suit was settled for $200,000. Liberty Mutual paid its limits of $100,000 and Courtesy paid the remaining $100,000.

Courtesy filed this suit against Houston General, Liberty Mutual, James C. Fortner,

and the Wilhite Insurance Agency, alleging that Houston General breached the umbrella insurance contract, and that Houston General was guilty of violations of the Deceptive Trade Practices-Consumer Protection Act and article 21.21 of the Texas Insurance Code. Courtesy alleged a negligence action against Fortner and Wilhite, and a negligence and deceptive trade practices action against Liberty Mutual. Following a bench trial, judgment was rendered in favor of Courtesy against Houston General for $100,000, plus prejudgment and postjudgment interest and attorney's fees. A take-nothing judgment was rendered against Courtesy on its actions against Fortner and Liberty Mutual. Apparently, an interlocutory default judgment was entered in Courtesy's favor against Wilhite.[2] The interlocutory judgment was made final under the terms of the final judgment. No complaint is made in this court by any party in respect to the take-nothing judgments and the judgment against Wilhite, and thus we affirm those judgments also.

Houston General assigns four points of error. We first address the fourth point by which Houston General contends that the trial court erred in holding that the eventual deletion of Courtesy as a named insured in the umbrella policy "was ineffective to relieve Houston General from liability to Courtesy for the Reece accident." It is undisputed that the umbrella policy was issued effective March 23, 1976. It is also undisputed that the policy was delivered to Courtesy's insurance agent Fortner in May 1976 and was delivered by him to Lamar T. Loe, vice president of Courtesy in Vicksburg, Mississippi, in August 1976.

Loe testified that he told Fortner in a telephone conversation "that we [Courtesy] had gotten coverage, additional umbrella coverage with Liberty Mutual and to cancel the umbrella coverage [with Houston General] for Courtesy." Loe could not fix the date on which the conversation took place. Loe denied that he "demanded" that Fort-

---

1. Houston General had notice of the suit, but denied coverage and refused to defend Courtesy therein.

2. The interlocutory order is not a part of the record before us.

ner delete the coverage from "inception." He further testified emphatically that he did not tell Fortner in March or April 1976 that Fortner was to delete Courtesy's coverage in the Houston General umbrella policy. Fortner on cross-examination testified in effect that he had submitted Courtesy's application for the umbrella policy and received the policy [3] in May 1976. According to Fortner's testimony, when he personally delivered the policy to Loe in Vicksburg, Loe reminded him of an earlier conversation, the date of which is uncertain, wherein Loe advised him that he was not to concern himself with insurance coverage for Courtesy and asked him to cancel the policy coverage "back to March 1976." Fortner's testimony reveals that he was uncertain about the date on which Loe instructed him to delete Courtesy's coverage under the Houston General umbrella policy.

Carl Westcott, president of Courtesy, testified that he talked to Bill Bowers, a representative of Liberty Mutual, about placing all of Courtesy's insurance coverage with that company, including umbrella coverage. Westcott related a conversation with Bowers in Tyler which occurred in February 1976 in which Bowers quoted the premium cost of Liberty Mutual's program of insurance for all coverage except the umbrella coverage. Westcott stated that he got a quote from Liberty Mutual on the cost of the umbrella policy in a letter dated July 27, 1976. Loe denied that he instructed Fortner to delete Courtesy's umbrella coverage with Houston General effective March 23, 1976. Based on this conflicting testimony, the trial judge found as a fact [4] that Loe did not direct Fortner to secure retroactive cancellation of Courtesy's umbrella coverage with Houston General. That finding is unchallenged here. In spite of this unchallenged finding, Houston General argues that Courtesy is bound by Fortner's action in requesting and receiving retroactive deletion from Houston General since Fortner was acting as Courtesy's agent.

Houston General contends, assuming Fortner's request for retroactive cancellation of the coverage was made after May 11, 1976, the date of the Reece incident, it nevertheless effected a mutual cancellation of the coverage to inception although the policy provisions were not followed.[5] In support of these arguments, Houston General refers us to dictum found in *Phoenix Ins. Co. v. American Trust & Savings Bank,* 248 S.W. 819, 821 (Tex.Civ. App.—El Paso 1923, writ ref'd), reading, "We have no doubt but that an assured ... may ... appoint an agent with the authority to do for him whatever he could do for himself in securing insurance, accepting notice, cancelling and surrendering a policy of insurance...." (Citations omitted.) The *Phoenix* court cites, *inter alia,* as its source of the dictum, *Dalton v. Norwich Union Ins. Soc.,* 213 S.W. 230 (Tex. Comm'n App.1919, judgmt adopted), and *East Texas Fire Ins. Co. v. Blum,* 76 Tex. 653, 13 S.W. 572 (1890). Neither *Dalton* nor *Blum* supports the broad dictum in *Phoenix* or Houston General's arguments. To the contrary, *Dalton* is inapplicable, and both *Phoenix* and *Blum* stand with *Shaller v. Commercial Standard Ins. Co.,* 158 Tex. 143, 309 S.W.2d 59, 64–65 (1958), for the proposition that simply because an insurance agent is authorized to secure insurance for another, the agent is not authorized to "receive notice of cancellation or ... to [agree] to a proposed cancellation of the policy," unless and "until he has secured other effective coverage." *Shaller,* 309 S.W.2d at 64, 65. (Citations omitted.) Fortner was authorized to effect cancellation of Courtesy's umbrella coverage with Houston General, but not retroactive cancellation to the policy's inception date. The trial court's findings of fact [6] that Houston General did not cancel the umbrella cover-

---

3. Five named insureds appear in the policy, viz. Lamar T. Loe Motor Company, Inc.; Lamar Loe Volkswagen, Inc.; Courtesy-Pontiac, Inc.; Lamar T. Loe, Inc.; and Lamar T. Loe personally.

4. Finding No. 29.

5. A written endorsement was issued by Houston General in December 1976 cancelling the coverage.

6. Findings Nos. 18 and 19.

age until December 1976 are unchallenged, as is finding number 29. Hence these findings are binding on this Court. *Whitten v. Alling & Cory Co.,* 526 S.W.2d 245, 248 (Tex.Civ.App.—Tyler 1975, writ ref'd). The trial court's conclusion of law number 1 correctly applies the law to these findings. Point number 4 is overruled.

We now address Houston General's first three points, reading,

1. The district court erred in its Finding of Fact No. 6, wherein it found that the Houston General umbrella policy specified underlying comprehensive general liability limits for bodily injury of '$_____, 000.00' per person, because there was no evidence to support this finding, the evidence instead showing conclusively that the specified limit was '$_____,000.00' per person.

2. The district court erred in overruling Houston General's motion to modify, correct, or reform the judgment or in the alternative for new trial, because its Finding of Fact No. 6, wherein it found that the Houston General umbrella policy specified underlying comprehensive general liability limits for bodily injury of '$_____,000.00' per person, was supported by factually insufficient evidence.

3. The district court erred in its Conclusions of Law Nos. 2 and 4, wherein it held that the Houston General umbrella policy required underlying comprehensive general liability coverage for bodily injury with liability limits of $0 per person.

The insuring agreements of the umbrella policy provide in pertinent part:

II. Underlying Limit—Retained Limit: The company shall be liable only for ultimate net loss resulting from any one occurrence in excess of either

(a) the amounts of the applicable limits of liability of the underlying insurance as stated in the Schedule *of Underlying Insurance Policies* [schedule A][7] less the amount, if any, by which any aggregate limit [is applicable] ... or
....

The limits of liability of any underlying insurance policy shall be deemed irrespective [of policy defenses available to the primary insurer]. . . .

■ Houston General argues that the evidence reveals that several forms of umbrella policies exist. Some policy forms provide so-called "split limit" coverage, i.e., one level of coverage per person and another level of coverage for each occurrence. Other policy forms provide coverage in excess of one level only, a "single limit" coverage. Houston General argues that under the provisions of Schedule A of its umbrella policy, its liability to Courtesy is limited to a claim in excess of the "each occurrence" limit of liability in the amount of $300,000 as stated in Schedule A. Houston General attacks the trial court's finding of fact number 6 that the "each person" bodily injury liability limit was zero dollars. That finding is based apparently on the trial court's consideration of the policy provisions alone. Houston General contends by its first two points of error that the evidence is legally and factually insufficient to support that finding. At trial neither party contended by appropriate pleadings that the umbrella policy was ambiguous in respect to the amount of primary coverage for the "each person" limit of liability, nor sought reformation of the policy on the basis of a mutual mistake in regard to the underlying "each person" limit of liability appearing in Schedule "A." Thus no extraneous evidence was offered in these respects. The trial court's finding and law conclusion determined that Houston General's umbrella policy was in effect a primary policy as to the "each person" liability limit, beginning with dollar one. As we view the matter, the trial court's judgment rests on its construction of the policy, a law question, and not on a fact issue at all. Houston General argues that the "hyphen" at "mid-line" in the printed space for the amount of underlying "each person" coverage effectively deleted this level of underlying insurance. Thus its umbrella coverage was based on a single

---

**7.** See Appendix A.

limit level of underlying primary insurance of $300,000 for each occurrence. Hence Houston General claims the trial judge erred in concluding [8] that the umbrella policy required only a zero dollar "each person" liability limit of underlying insurance. We cannot agree with this contention. It is well established that if any term of an insurance contract is ambiguous, "the insurer may not escape liability merely because … its interpretation should appear … a more likely reflection of the intent of the parties than the interpretation urged by the insured." *Continental Casualty Co. v. Warren*, 152 Tex. 164, 254 S.W.2d 762, 763 (1953). (Citations omitted.) [9] This rule of construction is applicable to this case. Considering the language of the insuring agreements (quoted in part above) and Schedule A of the umbrella policy, and particularly the fact that Houston General as the author and issuer of the policy did not delete the words "each person" under a limit of liability, we hold that the trial court correctly concluded that the umbrella policy required zero dollar primary coverage for bodily injury for each person in Courtesy's umbrella policy. Points one, two and three are overruled and the judgment is affirmed.

APPENDIX A

SCHEDULE A

<u>SCHEDULE OF UNDERLYING POLICIES</u>

It is agreed by the Named Insured that for the term of this policy the underlying coverages and limits described below are deemed to be in force and written without special restrictive endorsements and on standard forms in general use, except where noted.

<u>DESCRIPTION OF INSURANCE</u>

<u>LIMIT OF LIABILTY</u>

| DESCRIPTION OF INSURANCE | LIMIT OF LIABILTY | |
|---|---|---|
| | Bodily Injury: | |
| Comprehensive General Liability, including: | $ ___,000.00 | Each Person |
| Personal Injury, Blanket Contractual, | $ 300,000.00 | Each Occurrence |
| Products/Completed Operations | $ 300,000.00 | Aggregate |
| | Property Damage: | |
| | $ 100,000.00 | Each Occurrence |
| | $ 100,000.00 | Aggregate |
| | Bodily Injury: | |
| Comprehensive Automobile Liability, | $ 250,000.00 | Each Person |
| covering all owned, non-owned and hired | $ 500,000.00 | Each Occurrence |
| automobiles. | Property Damage: | |
| | $ 100,000.00 | Each Occurrence |
| Statutory Workmen's Compensation, covering in all jurisdictions where insured has employees, including Employers Liability (Coverage B) | $ 100,000.00 | Each Accident |
| Aircraft Liability including passenger hazard | $1,000,000.00 | |

---

**8.** Conclusions of law nos. 2 and 4.

**9.** *See also Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977).