## COMMERCIAL STANDARD INS. CO. v. RHODE ISLAND INS. CO.

No. 13353.

United States Court of Appeals
Fifth Circuit.

Jan. 4, 1952.

Rehearing Denied Jan. 31, 1952.

Harry N. Harris, Raymond E. Buck, Fort Worth, Tex., for appellant.

H. S. Lattimore, Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

The purpose of this suit, instituted by appellant against appellee, is to determine which of these companies is liable for an admitted loss sustained when the Morgan Mill Baptist Church, near Stephenville, Texas, was destroyed by fire on the morning of September 6, 1948. It is conceded that one of them is liable, but each insists that the other's policy, and not its own, was in effect when the fire occurred.

The facts are that a local insurance agency, known as King & Braeuer, represented both plaintiff and defendant in the Stephen-

ville area. Acting through this local agent, Commercial Standard Insurance Company, on July 19, 1948, issued a temporary "builder's risk" fire insurance policy covering said church, which was then under construction, effective while the building was "in the course of construction, and until fully completed and occupied either in whole or in part."

Under regulations of the Texas Board of Insurance Commissioners, then in effect, such a policy could be cancelled "only upon completion of the risk." No permanent policy could be written until the building was "closed in, doors and windows hung, and roof on." If additional work is necessary to complete a building when a permanent policy is issued, a permissive endorsement is required. Rhode Island Insurance Company's policy, hereinafter discussed, bore no such endorsement.

It appeared that the church would be completed and ready for occupancy on August 31, 1948. In anticipation thereof, and on or about August 28, 1948, the secretary of King & Braeuer agency prepared a permanent five-year policy in Rhode Island Insurance Company, covering the building, post dating it August 31, 1948. On August 31, 1948, a copy of the new policy was forwarded by the local agent, King & Braeuer, to the State checking office at Austin, which office registered the same and in turn forwarded the copy to the general agents of the Rhode Island Company at Fort Worth, where it was received on September 1st or 2nd, and partial reinsurance thereof, retroactive to August 31, 1948, secured with another insurance company. The local agency reported the policy to the Rhode Island Company as part of its August business. The secretary of King & Braeuer also noted on the agency's office record of the builder's risk policy issued by Commercial that said policy was cancelled, effective August 31, 1948. No endorsement was then made or attempted on the policy itself, as the policy was then in possession of a local bank as pledgee of the church, where it remained until long after the fire. When the policy was later surrendered to Commercial on December 17,

1948, it was then endorsed by the local agent "cancelled pro rata 8–31–48."

On August 28, 1948, the secretary of the local agency, King & Braeuer, handed the new policy to the salesman who had secured the business from the church, instructing the salesman to arrange with the church building committee as to the method of paying the premium thereon, and then to "pick up" the builder's risk policy and deliver the new policy. The salesman attempted to do this on August 28th, and again on August 31st, but was unable to contact the appropriate member of the church building committee. He thereupon placed the new policy in his office desk, and made no further effort to deliver it. The church building committee never assented to the substitution of the proposed new policy for the builder's risk policy.

When the fire occurred on the morning of September 6, 1948, the builder's risk policy was still in the hands of the bank as pledgee of the church; the new policy was still in the salesman's desk. The church building was entirely enclosed, but the front doors had not been hung, the windows were in place but not balanced, and a small amount of work remained to be done on the roof, including the installation of a cross atop the steeple. The varnish on the floor was slow in drying, and the pews and furniture had not been installed, so the building had not yet been occupied or used as a church. When the fire started, the contractor was at work installing the cross and nailing a ten foot strip of "ridge roll" on the roof. The unfinished work would have been completed within about six hours.

Each company denied liability, but in order to avoid interest and penalties, the two companies on December 17, 1948, agreed to, and did, each advance one-half of the amount necessary to settle with the church, further agreeing that they would submit to the courts the question of which company was liable for the loss. Commercial, who issued the builder's risk policy, sued Rhode Island Company, in whose name the permanent policy was written, to recover from the latter what the former had contributed to the settlement. Defendant,

 

Rhode Island Company, cross-claimed for its own contribution. In effect, therefore, each company sues the other to recover monies alleged to have been paid by it for the benefit of the other and for which it should be reimbursed, a liability which each denies.

The trial court held that the builder's risk policy was still in effect, and that appellant, who issued it, was liable for the loss. With this we agree.

Not only was the church ineligible for a permanent policy under the Texas insurance regulations, because not yet completed, but there was no delivery of the new policy, actual or constructive, prior to the fire. That there was no actual delivery is conceded. There was no constructive delivery because it was not intended that the new policy should become effective until (a) arrangements had been made by the church committee as to the payment of premiums thereon, and (b) the temporary policy had been surrendered. The salesman did not, and could not, accomplish either of these prerequisites on August 31st, because he was unable to contact the appropriate member of the church building committee, and because the temporary policy was in the hands of the bank as pledgee. He made no further effort either to deliver the new policy or to pick up the temporary policy. Thus the matter stood when the fire occurred. Moreover, the new policy provided that it should be effective only while the church was being used for church purposes, and the building had not yet been occupied when the fire occurred. The new policy was prepared under the mistaken belief that the church would be completed and occupied on or before August 31st, but this condition precedent to the effectiveness of the policy also failed. The new policy therefore had not become effective when the fire occurred. The attempt to issue it was premature and contrary to the Texas insurance regulations.

On the other hand, since the church building had not been completed, and had not been occupied either in whole or in part, the temporary builder's risk policy was still operative. That policy could not be cancelled prior to the completion of the risk, which had not yet occurred. The policy was not surrendered, nor was there any obligation or intention on the part of the assured to surrender it. The attempted, but ineffectual, issuance of the new policy did not *ipso facto* cancel the temporary policy. The temporary policy being still in effect when the fire occurred, and the new policy not yet having become operative, the trial court properly denied recovery to Commercial, who issued the temporary policy, and properly awarded judgment to the Rhode Island Company on its cross-claim against Commercial. Alliance Ins. Co. v. Continental Gin Co., Tex.Com.App., 285 S.W. 257.

Dalton v. Norwich Union Fire Ins. Soc., Tex.Com.App., 213 S.W. 230, and other cases relied on by appellant, are inapposite because they deal with liability as between insurer and assured,—not, as here, with a controversy between two insurers as to whether or not a new policy has superseded an existing policy. Compare Great American Ins. Co. v. D. W. Ray & Son, Tex.Com.App., 15 S.W.2d 223, which distinguishes Alliance Ins. Co. v. Continental Gin Co., supra.

Affirmed.