# BERTHA N. SHALLER AND WALTER SHALLER V. COMMERCIAL STANDARD INSURANCE COMPANY

No. A-6420. Decided January 8, 1958.
Rehearing overruled February 5, 1958.
(309 S.W. 2d Series 59)

*Gibson, Ochsner, Harlan, Kinney & Morris* and *S. Tom Morris,* all of Amarillo, for petitioners.

The Court of Civil Appeals erred in holding that as a matter of law the agency of Walter Shaller for B. N. Shaller included authority to consent to the cancellation of her policy; and that he did not consent and agree to a cancellation of the policies. East Texas Fire Ins. Co. v. Blum, 76 Texas 653, 13 S.W. 572; South Plains Coaches, Inc. v. Knox, 111 S.W. 2d 1151; Phoenix Ins. Co. v. American Trust and Saving Co., 248 S.W. 819, error refused.

*Underwood, Wilson, Sutton, Heare & Boyce,* of Amarillo, for respondent.

In response to petitioners' points cited Austin Fire Insurance Co. v. Polemanakos, Texas Com. App. 207 S.W. 922; Texas & P. Ry. Co. v. Wood, 145 Texas 534, 199 S.W. 2d 652; Burnett v. Atterberry, 105 Texas 119, 145 S.W. 582.

MR. JUSTICE NORVELL delivered the opinion of the Court.

■ This is an action to recover upon two insurance policies for the sums of $25,000 and $10,000 issued by Commercial Standard Insurance Company to Bertha N. Shaller and Walter Shaller respectively. Despite jury findings to the contrary, the Court of Civil Appeals held that the evidence disclosed as a matter of law that (a) Walter Shaller, as the agent of his mother Bertha N. Shaller, was authorized to agree to the cancellation of the policy issued in her name and that (b) Walter Shaller, acting for himself as the named insured in the $10,000 policy and as the agent of his mother as the named insured in the $25,000 policy, had agreed to the cancellation of the two policies involved or had waived the clause of the policy providing for five days

written notice of cancellation. See, Commercial Standard Insurance Co. v. Shaller, 302 S.W. 2d 258. In our opinion the Court of Civil Appeals erred in its holdings above set out and its order rendering judgment for Commercial Standard Insurance Company will accordingly be reversed. However, the jury findings (favorable to the Shallers) upon the issues of agency and agreed cancellation were attacked by proper points in the Court of Civil Appeals asserting that the same were without sufficient support in the evidence (as a matter of fact) and against the overwhelming preponderance of the evidence. As this Court has no jurisdiction over these fact issues, King v. King, 150 Texas 662, 244 S.W. 2d 660, a remand of the cause to the trial court will be ordered. Barker v. Coastal Builders, 153 Texas 540, 555, 271 S.W. 2d 798, 807. Our discussion here will be confined to the assignments supporting the reversal of the Court of Civil Appeals and such matters as will probably arise upon another trial.

With the exception of the varying accounts of a conversation relating to a cancellation of the policies sued upon, there is little dispute in the evidence although conflicting inferences may possibly be drawn therefrom. Commercial Standard Ins. Co. v. Davis, 134 Texas 487, 137 S.W. 2d 1. Mrs. Bertha N. Shaller (referred to in the trial court's charge and judgment simply as B. N. Shaller) was the owner of real property located in Potter County, Texas but lying outside the municipal boundaries of the City of Amarillo. A frame building or house had been moved upon the premises and remodelled so as to make it suitable for club and restaurant purposes. The real property was covered by the $25,000 policy while the $10,000 policy issued to Walter Shaller covered the furniture and fixtures located in the establishment. The structure was a two-story building and it was contemplated that the ground floor would be occupied by a restaurant while the upper story would be operated as a "bottle club," that is, a private organization with suitable compartments provided wherein members could keep liquors and beverages if they so desired.

It seems to have been recognized by both Walter Shaller, who represented himself and his mother insofar as procuring insurance was concerned, and Howard Williams, the local recording agent of Commercial Standard Insurance Company, that from an insurance standpoint the risk was not a desirable one, because of the frame construction of the building, its location outside an organized urban area and the nature of the contemplated use. However that may be, Howard Williams had placed the

building risk insurance for Shaller while the remodelling of the building was taking place and on August 20, 1955, as recording agent of Commercial Standard Insurance Company, he issued the two policies upon which the suit was brought. Both policies contained the following provision relating to cancellation:

"The insured may cancel this policy by notice to this company; upon surrender of the policy, this company shall refund the short rate, unearned, paid premium. This company may cancel this policy by giving the insured five days written notice; such notice shall state that the pro rata unearned paid premium if not tendered will be refunded on demand."

It seems that Williams had been writing insurance policies for Shaller for some five years. His usual practice was to mail an invoice with the policies when issued and charge Shaller's account therefor and render monthly bills. At the time the policies in suit were issued they were not delivered to Shaller but remained in the possession of the recording agent. It appears that no definite rate for the risk had been established and that some inspection or report by a representative of the Amarillo fire department or some other qualified person was required before a rate could be set and the billing completed.

Upon checking the recording agent's daily reports which contained copies of the typewritten portions of the policies issued, the fire insurance underwriter in the home office of the company had serious doubt as to the desirability of the Shaller risk. As a result Mr. Herman Brown, a special agent of the company, with offices in Lubbock, Texas was sent to Amarillo to make an inspection of the premises. Brown made this inspection in company with Shaller and the recording agent during the first part of September and thereafter told Williams that the company did not wish to further carry the risk. Williams, the recording agent, however, requested an additional week so that he might place the insurance with another company. Brown acceded to this request, but upon returning to Amarillo on September 12th and finding the policies still in Williams' possession, he picked them up and forwarded them to the home office for cancellation. Shaller was given no notice that the policies were being cancelled either upon the occasion of Brown's first visit to Amarillo or at the time Brown, acting under the evident impression that cancellation was an accomplished fact, took possession of the policies and mailed them to the home office.

The day after Brown picked up the policies Williams had a

telephone conversation with Shaller concerning the insurance and the testimony relating thereto constitutes a mooted portion of the evidence upon the issue of agreed cancellation. On October 3, 1955 the building owned by Mrs. Bertha N. Shaller and the contents thereof owned by Walter Shaller were destroyed by fire. The insurance company denied liability and the present suit resulted. As above indicated, the Shallers were successful in the district court but judgment was rendered against them by the Court of Civil Appeals and they occupy the position of petitioners before this Court asserting two points of error, namely, that the Court of Civil Appeals erred (a) in holding as a matter of law that the agency of Walter Shaller for his mother included the authority to accept cancellation of the policy issued in her name and (b) in holding as a matter of law that Walter Shaller consented or agreed to a cancellation of the policies.

Respondent's contention that it was entitled to judgment as a matter of law may be briefly summarized as follows:

(1)  Howard Williams, the local recording agent, had been instructed not to write a risk of the kind submitted, and this fact was known to Walter Shaller who was representing his mother as well as himself in securing insurance upon the respective properties owned by them.

(2)  The issuance or writing of the policies was no more than a method adopted by Williams and Shaller to submit the risk to the home office for the approval or rejection of the insurance company. Both Williams and Shaller so understood the situation and consequently the policies did not accomplish any contractual limitation on the matter of cancellation.

(3)  In view of the circumstances under which the policies were written Walter Shaller must be regarded as having consented to the cancellation of the policies and both he and his mother were estopped to deny that an effective cancellation had taken place.

(4)  Even if the Shallers had not consented to a cancellation at the time the policies were taken up and sent to the home office, they nevertheless acquiesced in such cancellation and waived any right they might have had to a written notice.

(5)  Howard Williams was acting as the agent for the Shallers in the matter of procuring insurance and his act in surrendering the policies to Brown, the special agent of the company, was fully binding upon them.

(6) The company's liability upon the policies had in all events ceased to exist on October 3, 1955 when the fire occurred.

The Court of Civil Appeals has held that there is no question but that the policies were in full force at least until the time they were picked up by Brown as the special agent of the respondent. We agree with this holding and it disposes of a number of respondent's argument above set forth.

It appears that respondent insurance agent had furnished Williams with a set of instruction sheets or a pamphlet known as a "Line Sheet" in which various insurance risks were classified, among which were "accommodation risks" and "prohibited risks." An accommodation risk was one which the company did not regard as desirable but which it would nevertheless write for the accommodation of a customer. A prohibited risk was one which the agent was instructed not to write. Listed under the head of "Prohibited Risks" (Not to be Bound or Written by Agents or Field Men)" were: "Country Clubs (unprotected) . . . Dance Halls . . . Night Clubs." It is not clear that Williams had read over the "Line Sheet," but he had told Shaller that the proposed establishment or club was not a desirable risk and according to Williams he may have said that it was a risk which he was not supposed to write. It is clear that both he and Shaller recognized that they might have difficulty finding a company that would "stay on the risk."

■ While Williams may have been both zealous and active in attempting to meet the insurance needs of a customer, there is no suggestion of fraud or actual collusion between him and Walter Shaller to issue the policies as a part of a scheme to defraud the company. This being true, his authority as a recording agent was controlled by his appointment made in accordance with statutory authority. It is undisputed that Howard Williams was licensed by the State of Texas and duly appointed by respondent as its local recording agent. As such, his authority and the extent thereof was controlled by the provisions of the insurance code and his designation as the type of agent prescribed therein. The purpose of the statute was to vest local recording agents with authority co-extensive with that of the company insofar as writing insurance is concerned and to remove all questions of the local agent's actual or apparent authority from the field of cavil or dispute. It follows that subsequent instructions given by the company to recording agents although taking the form of apparent restrictions upon the agent's authority can be classified only as directives to the agent rather than exceptions

or modifications of the agent's authority which is essentially statutory in nature.

In Home Insurance Company of New York v. Roberts, 129 Texas 178, 100 S.W. 2d 91 this Court construed Article 5062a, Vernon's Ann. Texas Statutes from which Article 21.14, Vernon's Texas Ins. Code was largely taken,[1] and directly held that

the authority of recording agents is found in the statute and was not subject to subsequent restriction even by contractual provisions contained in the policy itself. Following the Roberts case, Mr. Justice Folley speaking for the Court of Civil Appeals in New York Fire Insurance Company v. Reed, 138 S.W. 2d 138, wr. ref. said:

"In making the appointment under Article 5062a the appellant placed its mantle of authority upon Casey's (the local recording agent) shoulders, and, in effect, held him out to the public as an agent authorized to 'write, sign, execute and deliver policies of insurance' and to bind the company 'on insurance risks,' the terms of the policy to the contrary notwithstanding. Under his appointment Casey had as much authority with reference to insurance risks as any that could possibly be bestowed by by the appellant upon Floyd West & Co. (the general agent). As was said in the Roberts case, Casey 'had the authority to speak and act for the company, and transact all the insurance business of the company which it was authorized to transact under its permit from the state'. What more authority could Floyd West & Co. have had? We think it evident that in enacting Article 5062a the Legislature no doubt had in mind just such circumstances as existed in the instant case. * * * knowing no doubt that such circumstances as these oft-times worked undue hardships upon an unsuspecting public, the Legislature enacted a law whereby

---

1.—Article 21.14 of the Insurance Code provides for two types of recording agents depending upon the method of issuing policies employed by the insurance company. It is undisputed that Howard Williams was a recording agent authorized to sign policies himself and thus bind the company to insurance contracts. As to this species of agent the wording of the Insurance Code is practically identical with that Article 5062-a, Vernon's Ann. Texas Stats. which was superseded by the Code. The form of designation used for this type of agent is set out in the opinion rendered in Home Insurance Company of New York v. Roberts, 129 Texas 178, 100 S.W. 2d 91, as well as that handed down in New York Fire Insurance Company v. Reed, Texas Civ. App., 138 S.W. 2d 138, wr. ref.

We are not here concerned with the second type of recording agent defined in Article 21.14 of the Insurance Code, i.e., the agent representing a company whose general plan of operation calls "for the execution of policies of insurance by the home office of the insurance company or insurance carrier, or by a supervisory office of such insurance company or insurance carrier."

the public, in dealing with fire insurance agents might have some statutory assurance of the agent's authority to bind the company."

It follows that from and after August 20, 1955 there was in existence duly executed contracts of insurance between petitioners and respondent insurance company containing the cancellation clause heretofore set out.

Upon the issue of cancellation, respondent pleaded that Walter Shaller acting for himself and his mother Bertha N. Shaller agreed that the policies involved should be cancelled. By trial amendment it was also asserted that Walter Shaller for himself and his mother waived the contractual provision for written notice of cancellation. The jury refused to find from a preponderance of the evidence that Walter Shaller consented to a cancellation of the policies or that Mrs. Shaller had authorized her son to consent to a cancellation of the policy issued to her. As above noted the Court of Civil Appeals held that the consent of Walter Shaller to such cancellation as well as his authority to represent his mother in consenting thereto affirmatively appeared as a matter of law.

We are unable to agree with these conclusions. Of course, the transactions or conversations between Williams and Walter Shaller relating to the alleged cancellations are to be considered in connection with their prior personal and business relationships heretofore mentioned, but the issue of cancellation if determined as a matter of law must rest upon the premise that Williams was agent for the Shallers in the cancellation transaction or upon some theory of acquiescence, waiver or estoppel.

■ ■ The authorities do not support the proposition that respondent's defense based upon agency—Williams' agency for Walter Shaller and Walter Shaller's agency for his mother—was established as a matter of law. Williams was in effect the statutory agent of the company and ordinarily the applicant for fire insurance does not make the company's local recording agent his representative by applying for insurance. Further, it is settled law that one who authorizes another to procure insurance for him does not thereby constitute such person his agent to receive notice of cancellation or for the purpose of agreeing to a proposed cancellation of the policy. East Texas Fire Insurance Company v. Blum, 76 Texas 653, 13 S.W. 572; Phoenix Ins. Co. v. American Trust & Savings Bank, Texas Civ. App., 248 S.W. 819, wr. ref.; Gulf Insurance Company v. Beckville Royal High

School District No. One, Texas Civ. App., 38 S.W. 2d 828, wr. ref.; Farrington v. Commercial Standard Insurance Company, Texas Civ. App., 71 S.W. 2d 336, wr. dism.; 6 Appleman, Insurance Law and Practice, 735, Section 4187. Even when the agent is empowered to insure the property and keep it insured in any company that may be chosen by him, he is not authorized to cancel or accept cancellation of a policy until he has secured other effective coverage. Security National Fire Insurance Company v. Gulf Insurance Co., Texas Com. App., 41 S.W. 2d 17; Westchester Fire Ins. Co. of N. Y. v. Cannon, Texas Civ. App., 79 S.W. 2d 920, wr. dism. The statement from Continental Fire & Casualty Ins. Corporation v. Swanson, Texas Civ. App., 216 S.W. 2d 241, quoted in the opinion of the Court of Civil Appeals is clearly dicta even if it be considered as stating a rule contrary to the cases above cited.

■ It is undisputed that no written notice was given in accordance with the terms of the policy. It is likewise undisputed that Walter Shaller was not notified of the fact that Brown had picked up the policies until the day after the occurrence. When Shaller was informed of the event by telephone his conversation with Williams raised no more than a question of fact as to the issue of "agreed cancellation." It is reasonably clear from the testimony that Shaller realized that the company wanted to get off the risk and that it would be necessary to secure other insurance. He inquired "Where does that leave us?" and made no protest of Brown's action in picking up the policies the day before other than to complain that the company's action was a "kind of a high-handed way to conduct business or something like that." However, in his testimony upon the trial he maintained that he had never told Williams he could deliver the policies to the special agent for cancellation and that he never consented to such action. His position as stated on cross-examination was that as far as he knew, "the company had no authority to cancel a policy unless they either gave a man written notice or unless they get his consent. I certainly * * * had not given Howard (Williams) my consent to that. The testimony that he gave a while ago was not true when he said at the time the policies were issued I had given him consent." Mrs. Bertha N. Shaller testified categorically that her son was not an agent vested with general powers to handle her property and that she had never authorized him to accept cancellation of the policy issued to her.

The fact that Walter Shaller attempted to find another company to write the risk and had secured an insurance agent who

said his company was willing to do so does not prove an agreed cancellation as a matter of law. No substitute policies were ever issued and Shaller's explanation of this circumstance was that he wanted Howard Williams to have the opportunity of writing the policies if he could find a company that would stay on the risk. In Austin Fire Ins. Co. v. Polemanakos, Texas Com. App., 207 S.W. 922 relied upon by respondents it appeared that Polemanakos, after receiving notice that his policy with Austin Fire Insurance Company had been cancelled, actually "obtained other insurance before the fire to take its place." The cancellation clause in the policy involved in the Polemanagos case had no provision for a written notice of cancellation, the contract simply providing that "This policy shall be cancelled at any time at the request of the insured, or by the company by giving notice of cancellation." It was undisputed that notice had been given and the primary holding of the Commission of Appeals was that such notice was effective even though unaccompanied by a tender of the unearned premium theretofore paid. As an alternative proposition it was held that Polemanakos had consented to the cancellation. Neither the policy provision nor the surrounding facts or circumstances of the Polemanakos are analagous to those disclosed by the present record and such opinion is not controlling here.

The cancellation clauses in the policies sued upon call for a written notice. Unless a notice in writing to be waived or the policies be cancelled by mutual agreement of the parties, or some form of estoppel arises to preclude a reliance upon the contract as written, it follows that an oral notice, insufficient in law when given, could not mature into an effective cancellation of the policies by the mere lapse of five days or some other period of time from and after the date of the ineffectual oral claim of cancellation. As neither waiver nor estoppel nor agreed cancellation are established as a matter of law, it follows that the judgment must be reversed.

The judgment of the Court of Civil Appeals insofar as it renders judgment against petitioners is reversed. In view of that court's holdings, however, we must necessarily infer that it was of the opinion that the jury's answers to certain issues essential to the establishment of petitioner's claims are not supported by sufficient evidence or are against the overwhelming preponderance of the evidence as such contentions were raised by proper points in the Court of Civil Appeals. This requires that we affirm the Court of Civil Appeals judgment insofar as it reverses the judgment of the trial court. The cause will ac-

cordingly be remanded for another trial in accordance with this opinion. Liberty Film Lines, Inc. v. Porter, 136 Texas 49, 146 S.W. 2d 982; Bowman v. Puckett, 144 Texas 125, 188 S.W. 2d 571; Barker v. Coastal Builders, 153 Texas 540, 271 S.W. 2d 798. It is accordingly so ordered.

Opinion delivered January 8, 1958.

### ON MOTION FOR REHEARING

MR. JUSTICE NORVELL delivered the opinion of the Court.

Petitioners assert that the issues inquiring as to Walter Shaller's alleged agency for his mother and his alleged agreement on behalf of his mother and himself to cancel the policies in question are not essential to their causes of action but constitute affirmative defenses of the respondent and hence a remand of the cause is not required under the rule announced in Barker v. Coastal Builders, 153 Texas 540, 555, 271 S.W. 2d S.W. 2d 798, 807.

■ Strictly speaking, the issue of cancellation was not a part of petitioners' cause of action. It was a defendant's rather than a plaintff's issue. Such issue was, however, raised by the evidence and affirmative answers thereto would have been fatal to a recovery by petitioners. A negative answer to a defendant's affirmative issue may be as much against the overwhelming preponderance of the evidence as the answer to any other issue. The rule is applicable to all issues whether they be classified as plaintiff's or defendant's issues, or answered in the affirmative or in the negative. Lee v. International & Great Northern R. Co., 89 Texas 583, 36 S.W. 63; Barron v. Houston East & West Texas Ry. Co., Texas Com. App., 249 S.W. 825, holding approved by the Supreme Court.

The motions for rehearing filed by the petitioners and the respondent are overruled.

Opinion delivered February 5, 1958.