Carmen JACAMAN, Co-Executrix of the Estate of M. S. Jacaman, Petitioner,

v.

FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., et al., Respondents.

No. B–88.

Supreme Court of Texas.

June 28, 1967.

Dissenting Opinion Oct. 4, 1967.

Rehearing Denied Oct. 4, 1967.

Mann, Castillon, Freed & Kazen, George P. Kazen and R. J. Goodman, Laredo, for petitioner.

Jacob G. Hornberger, Laredo, Beckmann, Stanard, Wood & Vance, Richard C. Keene, Groce, Hebdon, Fahey & Smith, Damon Ball, San Antonio, for respondents.

WALKER, Justice.

This is an action on two fire insurance policies, one for $10,000.00 and the other for $5,000.00, issued by respondents to M. S. Jacaman. Petitioner is the personal representative of the insured, who died after the suit was filed. Each policy by its terms covered the "contents" of La Popular Store at 415–417 Convent Avenue, Laredo, Texas, and stipulated that "unless otherwise provided, insurance on personal property shall cover only while in the described building." About three months before the fire, La Popular was closed and all contents of the building described in the policies were moved to the Frontier Shop. The latter store, which was also owned and operated by the Jacaman family, was located some three or four blocks from La Popular.

There was a fire at the Frontier Shop on September 11, 1963, and the evidence shows that the loss amounted to about 70% of the value of the merchandise and fixtures located there. This suit was instituted when respondents denied liability on their policies. The trial court instructed a verdict for respondents, and petitioner appealed to the Court of Civil Appeals. It was her contention there, as in the trial court, that the change in location of the insured property was waived by respondents' agent, R. E. Laurel. The Court of Civil Appeals concluded that there is no evidence to show that Laurel was the agent of respondents at the time of the alleged waiver, and the judgment of the trial court was accordingly affirmed. 410 S.W.2d 189. It is unnecessary for us to consider the agency question, because it is our opinion that petitioner failed to establish the amount of the loss for which respondents would be liable under her theory of the case.

At the time of the fire, the Frontier Shop contained: (1) the merchandise and fixtures moved there from La Popular; (2) merchandise subsequently moved there from the Frontier Shop Annex, another establishment which was operated by the Jacaman family for a short time; and (3) merchandise and fixtures originally purchased for and placed in the Frontier Shop. The Frontier Shop continued to operate as a retail store after La Popular was closed. Merchandise was sold there, and the stock was replenished by "a lot" of purchases. New merchandise that had been ordered for La Popular was delivered by the carrier directly to the Frontier Shop.

The total value of all merchandise located in the Frontier Shop at the time of the fire was $90,000.00, and the value of the furniture and fixtures was about $5,000.00.

Petitioner established these facts and sought to recover the aggregate of the two figures less the salvage from the fire and also less the amounts paid under three other insurance policies covering the Frontier Shop. This computation showed a net loss of $31,862.50 for which petitioner has not been reimbursed. The value of the merchandise transferred from La Popular was approximately $26,000.00, but no attempt was made to show how much of this was on hand at the time of the fire.

About two months before the fire, Laurel learned that La Popular was closed and that the contents of the building had been moved to the Frontier Shop. He had the following conversation with petitioner at that time:

Q. And he told you at that time that Freddie had told him that you had closed La Popular?

A. He told me this, that he went first to the Popular and saw it was closed, so he went to Freddie and asked him and Freddie told him that we had to close.

Q. Was that the extent of his conversation with you about the La Popular Store?

A. He also talked about the balance that was owing, and then I asked him about the policies on the contents.

Q. Of the Popular Store?

A. Of the Popular Store, that we had moved them and he said that does not affect anything as they are under your father's name, as long as they are under your father's name.

It also appears that the two insurance policies were not cancelled and the unearned premiums were not refunded. Petitioner says that when respondents' agent learned that the provisions of the policies had been breached, but nevertheless assured her that the coverage was not impaired and took no action to cancel the policies or return the unearned premiums which had already been paid, respondents waived the breach of the policies. In support of this contention, she cites United States Fidelity & Guaranty Co. v. Taylor, Tex.Civ.App., 11 S.W.2d 340 (wr.ref.); Girard Fire and Marine Ins. Co. v. Mallard, Tex.Civ.App., 13 S.W.2d 895 (wr.dis.); and Camden Fire Ins. Ass'n v. Bond, Tex.Civ. App., 202 S.W. 220 (no writ).

While the cited cases support the proposition urged by petitioner, they avail her nothing here. In each of them the suit involved the *property described in the insurance policy,* and it was held that the policy continued to cover such property after the same was moved to a different location. When viewed in the light most favorable to petitioner, the evidence in the present case indicates, at most, a willingness to insure the contents of La Popular after their removal to the Frontier Shop. There is nothing in the record to warrant the conclusion that Laurel agreed to extend the coverage to all merchandise and fixtures located in the Frontier Shop.

Even if petitioner is correct in her analysis of the evidence and the law applicable thereto, we have the insured merchandise and fixtures placed in a building with other similar property. The total loss resulting from damage to and destruction of the entire stock of merchandise and all the fixtures located in the building is shown, but petitioner has supplied no information that would enable the trier of fact to determine the extent of respondents' liability. The merchandise from La Popular was placed on the main floor at the Frontier Shop, and all of the merchandise on that floor was totally destroyed. The record does not disclose, however, the amount of sales made from the Frontier Shop during the period between the closing of La Popular and the fire. None of the witnesses undertook to estimate the value of the La Popular merchandise and fixtures that were in the building when the fire occurred, and we have no facts from which such an estimate could be made. The loss sustained as a result of damage to the property insured by respondents is thus a mat-

ter of pure speculation. This was urged in the motion for instructed verdict, and in our opinion the trial court properly granted the same on that ground.

The judgment of the Court of Civil Appeals is affirmed.

### Dissenting Opinion

NORVELL, Justice.

Both of the insurance polices upon which petitioner sued were issued by R. E. Laurel, doing business as Laurel Insurance Agency, in his capacity as recording agent for the respondent insurance companies. As to the authority of a statutory recording agent, see Shaller v. Commercial Standard Insurance Company, 158 Tex. 143, 309 S.W. 2d 59 (1958). The policies were issued in 1958. The loss by fire occurred in 1963 within the five year term prescribed in the policies. The crucial conversation between R. E. Laurel and petitioner took place about two months before the fire. At that time, Laurel purported to act on behalf of the respondents and as it was shown that the relationship of principal and agent existed between respondents and Laurel in 1958, it will be presumed or inferred, in the absence of rebuttal testimony, that such legal relationship continued and was in existence at the time of petitioner's conversation with Laurel in 1963. McCormick and Ray, Texas Law of Evidence (2d Ed.) § 81.

My difference with the court lies in the interpretation of the conversation between petitioner and Laurel. The court holds that the effect of this conversation was to modify the terms of the policies as originally written so as to provide for coverage of only that portion of the "contents" remaining on hand at the time of the fire which had been removed from La Popular Store to the Frontier Shop. To me, this view is highly unrealistic and in effect creates a most unusual type of insurance which is wholly unsuited to the business of retail merchandising. We are here dealing with a "contents" policy covering a stock of goods. In Appleman, Insurance Law and Practice, § 2296, it is said:

"A fire policy on a stock of goods which, in the nature of the business, will be continuously changed is insurance of stock in general, and not of the specific items on hand at the time of the issuance of the contract; it will, accordingly, cover new goods as acquired. Nor is this result changed by a moving permit endorsement. And a policy upon stock in trade may cover the aggregate stock of a vendor and vendee, when assembled together for carrying on the same business."

We have a merger of stocks of merchandise, so to speak. Had the stock of merchandise in the Frontier Shop been moved to La Popular store, there could be little doubt that the policies as originally written would have covered the goods brought in from the Frontier Shop just as if they had been purchased from a wholesaler. I see no difference between this stated situation and the one now before us where with the knowledge and consent of the recording agent, the stock of La Popular was merged with that of the Frontier Shop at the location of the latter establishment. The obvious result of the conversation and agreement between petitioner and the agent Laurel (by whichever theory that may be selected—waiver, estoppel or change in policy provision) was to provide coverage up to $15,000.00 upon a changing stock of merchandise then located at the Frontier Shop just as the original policies provided for coverage of a changing stock of merchandise of approximately $15,000.00 in value located at La Popular.[1] The change

---

1. The value of the stock of merchandise and goods destroyed by the fire was in excess of the insurance carried thereon, considering the policies originally issued to cover "contents" at the Frontier Shop location, plus the two policies involved in this litigation. If liable at all, respondents are liable for the full amount of the policies issued by them.

was one of location of the insured "contents" and not one which wholly changed the nature of the contract to cover only a stock of merchandise that was constantly being diminished by sales therefrom.

I cannot accept the thesis that after the Popular store merchandise was moved to the Frontier Shop, the parties intended that for insurance purposes the merchandise then in the Frontier Shop should be considered as two stocks of merchandise, one stock being covered by one group of policies and the other stock covered by an entirely separate group of policies. Certainly, merchants do not procure such a type of insurance upon stocks of merchandise owned by a single individual, located in a single store and handled as a single merchandising unit.

Both policies were written upon the Texas standard form designed to cover stocks of goods of mercantile establishments and provided coverage "On Contents—in the two-story, metal roof, brick building, location, 415–417 Convent Avenue, Lardeo, Texas." In both policies the occupancy was stated as "dry goods store and hotel above." The policies contained the following provisions:

"Insurance on stock shall include all stocks of merchandise (finished, in process, or unfinished) including packaging materials, * * *."

"Contents—Insurance on 'Contents' shall include all property included above in 'Stock,' * * *."

Some time before the fire, M. S. Jacaman (petitioner's father) moved the contents of La Popular store located at 415–417 Convent Avenue to the Frontier Shop which was also owned by Jacaman. This was done to remove any question of homestead claim to La Popular premises so that Jacaman could mortgage the same in order to secure funds to purchase a vacant bank building.

Some time before the fire and after Laurel knew that the contents of La Popular had been moved to the Frontier Shop, he had a conversation with petitioner and mentioned the circumstance that the La Popular was now vacant. There was also some discussion concerning a balance which Laurel claimed was due him on the Jacaman insurance account. The question then arose as to policies covering the "contents" of La Popular which had been moved to the Frontier Shop. Laurel, according to Miss Jacaman, said "that does not affect anything as they are under your father's name, as long as they are under your father's name." At that time, nor thereafter, were the policies cancelled nor were any unearned premiums returned or tendered to petitioner. In view of the peremptory instruction, we should view the testimony in the light most favorable to petitioner. When this is done, the conclusion seems inescapable that a change in the location of the insured "contents" or stock of merchandise was effected by oral agreement or by means of waiver or estoppel. Such change may be validly made orally by a recording agent.

Change of location is the important element in this case. I agree with petitioner's argument that, "Agent Laurel impliedly gave his consent to this change of location, or at least waived any objection to same by his conduct. The effect of that consent was exactly as if he would have written an endorsement to the policy granting consent to a change of location. The end result was simply that an insurance policy on the 'contents' of a retail store at one location became an insurance policy on the 'contents' of a retail store at the changed location. It is as simple as that."

I respectfully dissent from the order affirming the judgment of the courts below.

SMITH and STEAKLEY JJ., join in this dissent.