## UNITED STATES FIRE INSURANCE COMPANY, Appellant,

### v.

## John Edward HUTCHINSON, Appellee.

### No. 7853.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 31, 1967.

Rehearing Denied Dec. 5, 1967.

Victor Hlavinka, Norman C. Russell, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

Harry Friedman, Harkness, Friedman & Kusin, Texarkana, for appellee.

FANNING, Justice.

Appellant insurance company has appealed from a total permanent disability judgment rendered in favor of appellee in a workmen's compensation insurance case tried before a jury.

The primary dispute in this case relates to whether or not appellant was providing workmen's compensation insurance to appellee's employer at the time of the injury sued upon. (Plaintiff-appellee initially sued appellant and another insurance company, Commercial Union Insurance Company of New York, jointly. However, Commercial Union was dismissed from the

case and issues were submitted to the jury only with respect to appellee's case against appellant). Appellant issued a written workmen's compensation insurance policy covering appellee's employer purporting to be effective on May 6, 1964, which was sixteen days after plaintiff-appellee's alleged injury. Plaintiff-appellee pled and offered proof that defendant-appellant's local recording agent, Eldon Glass, at DeKalb, Bowie County, Texas, prior to plaintiff-appellee's injuries, orally bound defendant-appellant insurance company for workmen's compensation insurance to cover Don Harirson Chevrolet Company, plaintiff-appellee's employer at DeKalb, Texas.

The Jury, in response to special issues submitted, found to the effect: (1) Plaintiff sustained total disability following his injury; (2) said injury was a producing cause of said total disability; (3) such total disability began on April 20, 1964, (which was the date of injury); (4) such disability has been or will be permanent; (issues 5 through 10 were not answered); (11) the average weekly wage of plaintiff as of the date of his injury was $90.00; (12) that Eldon Glass, within a six months period after April 20, 1964, represented to the plaintiff that he, the plaintiff, should not worry about a thing because he, Eldon Glass, would take care of filing a claim for the plaintiff; (13) that plaintiff relied on such representations; (14) that such a belief prevented plaintiff from filing his claim up to and until the time it was filed; (15) that plaintiff's such reliance constituted "good cause" for not filing his claim sooner than it was actually filed; (16) that a binder for workmen's compensation insurance coverage binding United States Fire Insurance Company, covering the employees of Don Harrison Chevrolet Company, was made by Eldon Glass prior to April 20, 1964; (17) that there was such a binder in effect on April 20, 1964; (18) that Eldon Glass represented to Don Harrison, or his agent or employee, prior to April 20, 1964, that there was a binder for workmen's compensation insurance on the employees of Don Harrison Chevrolet Company; (19) that such binder was represented to be with United States Fire Insurance Company; (issues 20, 21 and 22) that Don Harrison or his agents and employees believed such statements and relied on such representations; and such belief prevented Don Harrison from obtaining workmen's compensation insurance coverage elsewhere.

Appellant by its first and second points contends to the effect that the trial court erred in admitting testimony of the appellee to the effect that he was told by Eldon Glass after the occurrence of the alleged injury that workmen's compensation insurance was furnished by United States Fire Insurance Company so as to cover said alleged injury over the objections that same was hearsay and called for an opinion or conclusion that invaded the province of the jury. Appellant among other points also contends to the effect that there was no evidence of probative force and insufficient evidence to show insurance coverage by it.

Eldon Glass was the lawfully appointed and duly designated local recording agent for United States Fire Insurance Company at DeKalb, Texas. He had the authority generally given to a local recording agent. He had been the local recording agent of appellant since July, 1961. Eldon Glass, as appellant's local recording agent, had authority to make a contract for workmen's compensation insurance with Don Harrison Chevrolet Company of DeKalb, Texas, the employer of appellee. These facts were proven by interrogatories to appellant and by answers of appellant to requests for admissions. Eldon Glass was also the local recording agent for Commercial Union Insurance Company and he represented a number of other insurance companies during the period in question from January 1, 1964, through May, 1964, and for some time thereafter until 1965. Don Harrison Chevrolet Company had obtained insurance coverage through Glass's agency over a period of years. Over several years' period Glass had placed Harrison's workmen's

compensation insurance coverage with at least four different carriers. On January 1, 1964, Harrison's workmen's compensation insurance policy with Commercial Union, previously written by Glass in 1963, expired.

Eldon Glass was called to the witness stand by appellee under the adverse party rule, and he testified that he was the local recording agent of appellant from 1957 to 1965. Appellee was injured on April 20, 1964, while working for Don Harrison Chevrolet Company.

Mr. Glass testified to the effect that he had a conversation with Mr. Hodges, the bookkeeper of the employer, sometime between January 1, and May 6, 1964, and told him that he would cover Don Harrison Chevrolet Company with workmen's compensation insurance. Glass also testified to the effect that he had made a statement that United States Fire Insurance Company would be the only one that you could place responsibility for this coverage.

Appellant insurance company furnished Eldon Glass with drafts bearing their name for him to pay claims. Although these draft forms were designed for paying fire and property losses, Mr. Glass filled out several of these drafts payable to appellee for workmen's compensation. Mr. Glass' procedure in this respect was to write out the draft which had appellant's name printed on it and which was a form furnished Glass by appellant, and Glass made said drafts payable to appellee as workmen's compensation weekly benefits, and Glass would have appellee endorse the draft and Glass would have appellee return to him the draft and Glass would pay appellee cash therefor. Appellee was thus paid workmen's compensation for several weeks by Glass in the manner above indicated. The record indicates that Glass kept these drafts in his desk after he cashed them for appellee, and that he did not send them through the bank for collection upon his

principal, United States Fire Insurance Company.

Mr. Glass further testified to the effect that the normal procedure for placing insurance is to first place a binder. Mr. Glass related that appellant got 90% of $707.31 as its fee for issuing the insurance, which premium was paid by the employer to Glass as it was billed by Glass. Mr. Glass further testified that there would have been a binder prior to the date of the policy.

Mr. Glass also testified that appellant knew about the loss or injury of April 20, 1964, when the policy was dated as of May 6, 1964.

Don Harrison, the employer, testified that in the latter part of January, 1964, Mr. Glass told him that his company was under binder for workmen's compensation and that Mr. Glass named a specific company that the binder was with but he did not remember the name of the company.

Mr. Hodges, the employer's bookkeeper, testified that Mr. Glass stated to the effect that his employer was covered by workmen's compensation insurance and that such conversation occurred between January 1, 1964, and April 20, 1964.

Nick Atchley, an employee of Don Harrison, testified that he overheard a conversation between the month of January, 1964, and the time Mr. Hutchinson was hurt in April, 1964, wherein Mr. Glass stated to the effect that there was a binder for workmen's compensation insurance for the employer, Don Harrison Chevrolet Company.

Appellee testified to the effect that Mr. Glass told him that he was covered by workmen's compensation insurance by a binder with appellant, United States Fire Insurance Company, and that Mr. Glass told him the name of the insurance company "right after I got hurt". Appellee Hutchinson's testimony with respect to his discussion of workmen's compensation cov-

erage with Glass and appellant's objections thereto are quoted below.[1]

The law problems posed by appellant's first and second points with respect to the admissibility of the local recording agent Glass' statements to appellee Hutchinson are many and varied. Involved are not only questions of agency but the power and authority of a local recording agent under Art. 21.14 of the Texas Insurance Code, V.A.T.S. There are many authorities on the various problems involved. We think that on the question of agency, McCormick & Ray, Texas Law of Evidence, Second Edition, Volume 2, § 1164, gives an excellent treatise upon various aspects of such problems, citing in its footnotes many of the authorities cited by the parties in this suit, and we quote said § 1164 in part as follows:

"It is generally conceded that an agent's assertions made within the scope of his authority are, in most cases, receivable in evidence against his principal. The difficulty is to determine when the assertions are within the scope of the agent's authority. Cases involving assertions made under express authority seldom arise and are easy of solution. The more common case and the one which presents difficulty is that of an admission made under implied authority. As to these the rule is usually stated thus: The declarations or statements of an agent are admissible against his principal when they accompany an authorized act or are closely enough connected with it to be considered a part of the res gestae. Statements made subsequent to an act or transaction are treated merely as narrations of past facts and are not admitted against the principal. For example, in personal injury actions the declarations of an agent or servant as to the

[1] "Q. Now did you ever have a conversation with Mr. Glass as to whether or not there was workmen's compensation coverage?
"A. Yes, sir.
"Mr. Hlavinka: Well the conversation with Mr. Glass would have to be hearsay. We would object to that question and move to strike the answer on that ground.
"The Court: Overruled. What did he tell you?
"Mr. Hlavinka: That would be hearsay; we object.
"The Court: Overruled. Go ahead.
"A. He said not worry, that I was under workmen's compensation.
"Mr. Hlavinka: We further object that that involves a conclusion and an opinion which invades the province of the jury.
"Q. The Court: Overruled. All right, did he say anything about a binder.
"A. Yes, sir.
"Q. What did he say?
"A. He said * * *.
"Mr. Hlvainka: That would be hearsay, if the Court please. We object.
"The Court: Overruled.
"Mr. Hlavinka: And if the court please, further we object on the grounds it involves a conclusion which invades the province of the jury.

"The Court: Overruled.
"A. He said that the binder had been put on there around the first of the year.
"Q. Yes, sir.
"A. But he hadn't never got around to getting the policy wrote.
"Q. All right, did he tell you who the binder was with?
"A. Yes, sir.
"Mr. Hlavinka: That would be hearsay, if the Court please. Also invades the province of the jury * * *
"A. United States Fire.
"Mr. Hlavinka: Hush, please sir. Also invades the province of the jury.
"The Court: Overruled.
"Mr. Hlavinka: And if the question has been answered prior to the objection, we move to strike the answer.
"The Court: Overruled.
"Q. All right, who did he tell you the binder was with?
"Mr. Hlavinka: That would be hearsay, and also invades the province of the jury.
"The Court: Overruled.
"A. United States Fire Insurance Company.
"Q. That is the defendant in this case. Is that right?
"A. Yes, sir."

cause of the injury or the manner in which it occurred are frequently excluded under this rule.

"The requirement that the statement offered as an admission must have been made at the time the agent was doing some act concerning which it was made, doubtless results from a confession of the exception to the hearsay rule for admissions with the exception for spontaneous exclamations. Unfortunately the courts discuss the two principles as if there were but one principle. It is apparent that the two exceptions to the hearsay rule are distinct and unrelated. They have nothing in common and rest upon entirely different grounds. Admissions are received because they are inconsistent with the party's present position and because he cannot logically object that he has not been allowed to cross-examine himself. The exception for spontaneous statements rests upon the consideration that statements made under the influence of excitement are likely to be true. If an intelligent solution of the present problem is to be had the courts must insist on keeping these two principles separate.

"The requirement that the declaration be a part of the res gestae is probably just another way of saying that the declaration must be made as a part of the performance of an authorized act. Yet some of our courts have treated res gestae as meaning the operative facts of the case in litigation and have consequently excluded statements made in other transactions clearly within the scope of the agent's authority. They are apparently misapplying the 'verbal act' doctrine. Under that doctrine all statements made as a part of a relevant transaction are called 'verbal acts' and admitted as such. Since they are not admitted to prove the truth of the facts asserted the hearsay rule is not applicable.

"It is clear that the usual statement of the rule serves merely to increase the

difficulty and prevents a rational application of the rule to a particular fact situation. *A more accurate statement of the rule would be: The assertions of an agent are admissible against his principal when made within the scope of the agent's express or implied authority to make assertions. While this general statement does not solve the problem it is at least free from confusion. In the last analysis the application of this general principle to specific instances must be determined by the rules of the substantive law of agency.* * * * (Emphasis added.)

For cases dealing with the authority of a local recording agent see the following: New Hampshire Fire Ins. Co. v. Plainsman Elevators, Inc., Tex.Civ.App., 371 S.W. 2d 68, wr. ref., n. r. e. (1963); Shaller v. Commercial Standard Insurance Company, 158 Tex. 143, 309 S.W.2d 59 (1958); New York Fire Insurance Company v. Reed, Tex.Civ.App., 138 S.W.2d 138, writ ref'd (1939); Home Insurance Company of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91 (1937).

In New Hampshire Fire Ins. Co. v. Plainsman Elevators, Inc., supra, 371 S.W. 2d 68, it was stated in part as follows:

"Appellant's points five, six, seven and fourteen are presented together. All four of these assignments concern a Shantzer Drier. The Shantzer Drier was not installed when the original policy in question was issued but was completed October 31, 1959. The rider to the insurance policy insuring the Shantzer Drier was dated November 25, 1959, and being effective from November 25, 1959. *The damage here in question happened on November 6, 1959, being some nineteen days before the date of the rider insuring the Shantzer Drier.* Appellant's points five, six, and seven contend the court erred in admitting the endorsement attached to the insurance policy applicable to the Shantzer Drier; in submitting the issues to the jury relating to the Shantzer

Drier, and in granting judgment with respect to the Shantzer Drier. *Then the fourteenth point contends the court erred in overruling objections to the testimony of the witness, Silverthorne, with respect to his legal opinion, he not being qualified. It is admitted by the attorney for the appellant that Mr. Silverthorne was a local recording agent of the appellant and Mr. Silverthorne so testified.* Mr. Silverthorne testified he was called before November 6, 1959, by someone from the appellee's office for additional coverage. It is also undisputed that appellant knew of the accident here in question before issuing the rider dated November 25, 1959. It is also acknowledged that the appellant received and accepted the premium covering the Shantzer Drier from November 1, 1959. The policy was cancelled April 21, 1960. As to that cancellation Mr. Silverthorne testified as follows:

"Q. Mr. Silverthorne, when you canceled that policy out in April, you canceled it out on a short-term basis?

"A. No, sir.

"Q. But you did charge insurance on the Shantzer Drier from November 1 until the date it was canceled?

"A. Yes, sir.

"Q. And as far as anybody denying that this Shantzer Drier was not covered, you are not a party to that denial, are you?

"A. No, sir.

"Q. *You say it was covered?*

"A. *Yes, sir.*

"Q. *And you were the agent for this company?*

"A. *Yes, sir.*

"Q. *You took this man's money and, as far as you are concerned, it's covered?*

"A. *Yes, sir.*

(Emphasis added)

"Since Silverthorne was appellant's recording agent, his authority and the extent thereof was controlled by the provisions of the Insurance Code, Article 21.14, V.A.T.S. New York Fire Insurance Co. v. Reed, Tex.Civ.App., 138 S.W.2d 138 (writ refused); Home Ins. Co. of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91; Shaller v. Commercial Standard Insurance Company, 158 Tex. 143, 309 S.W.2d 59.

"In the Shaller case the court stated:

" 'As such, his authority and the extent thereof was controlled by the provisions of the insurance code and his designation as the type of agent prescribed therein. The purpose of the statute was to vest local recording agents with authority co-extensive with that of the company insofar as writing insurance is concerned and to remove all questions of the local agent's actual or apparent authority from the field of cavil or dispute.'

"It is stated in 44 C.J.S. Insurance § 266, p. 1070 as follows:

" 'The effective date of the policy does not depend on the time of delivery if the parties have agreed on another date, and the policy is effective from the time agreed on, although it is not delivered until after loss. When so stipulated, the policy on delivery may take effect as of a previous date.'

"Appellant's points five, six, seven and fourteen are overruled. * * *"

In Shaller, supra (309 S.W.2d 59) a Texas Supreme case, opinion by Justice Norvell, it was stated in part as follows:

" * * * It is undisputed that Howard Williams was licensed by the State of Texas and duly appointed by respondent as its local recording agent. As such, his authority and the extent thereof was controlled by the provisions of the insurance code and his designation as the

type of agent prescribed therein. The purpose of the statute was to vest local recording agents with authority co-extensive with that of the company insofar as writing insurance is concerned and to remove all questions of the local agent's actual or apparent authority from the field of cavil or dispute. It follows that subsequent instructions given by the company to recording agents although taking the form of apparent restrictions upon the agent's authority can be classified only as directives to the agent rather than exceptions or modifications of the agent's authority which is essentially statutory in nature.

"In Home Insurance Company of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91 this Court construed Article 5062a, Vernon's Ann.Tex.Statutes from which Article 21.14, Vernon's Tex.Ins.Code was largely taken, and directly held that the authority of recording agents is found in the statute and was not subject to subsequent restriction even by contractual provisions contained in the policy itself. Following the Roberts case, Mr. Justice Folley speaking for the Court of Civil Appeals in New York Fire Insurance Company v. Reed, 138 S.W.2d 138, wr. ref. said:

> " 'In making the appointment under Article 5062a the appellant placed its mantle of authority upon Casey's (the local recording agent) shoulders and, in effect, held him out to the public as an agent authorized to "write, sign, execute and deliver policies of insurance" and to bind the company "on insurance risks", the terms of the policy to the contrary notwithstanding. Under his appointment Casey had as much authority with reference to insurance risks as any that could possibly have been bestowed by the appellant upon Floyd West & Co. (the general agent). As was said in the Roberts case, Casey "had the authority to speak and act for the company, and transact all the insurance business of the company

> which it was authorized to transact under its permit from the state". What more authority could Floyd West & Co. have had? We think it evident that in enacting article 5062a the Legislature no doubt had in mind just such circumstances as existed in the instant case. * * * Knowing no doubt that such circumstances as these oft-times worked undue hardships upon an unsuspecting public, the Legislature enacted a law whereby the public, in dealing with fire insurance agents, might have some statutory assurance of the agent's authority to bind the company' ". (Emphasis added)

In Presidential Life Insurance Company v. Calhoun, Tex.Civ.App., 325 S.W.2d 732, writ refused, n. r. e. (1959), it was stated in part as follows:

> " ' * * * The declarations made by an officer or agent of a corporation, in response to timely inquiries, properly addressed to him and relating to matters under his charge, in respect to which he is authorized in the usual course of business to give information, may be given in evidence against the corporation * * *.' West Texas Produce Co. v. Wilson, (Supreme Ct. adopted) 120 Tex. 35, 34 S.W.2d 827, 829."

In other contentions appellant also contends that the local recording agent had no authority to orally bind it on workmen's compensation insurance, but that only a written policy would bind it. If such contention was correct the evidence complained of by appellant's 1st and 2nd points would be of no probative force, nor would it be admissible. However we think it is clear that a local recording agent can orally bind his insurance principal upon workmen's compensation insurance. In this connection, see Travelers Indemnity Company v. Holman, 5th cir., 330 F.2d 142 (1964) wherein it was stated in part as follows:

> "Save for regulatory purposes, not in any way here involved, Texas law does

not require any particular form, and it recognizes the validity of a binder, a contract to insure, or a contract of insurance regardless of its informality. 32 Tex. Jur.2d, Insurance, § 5, at 29, § 11, at 36, § 12, at 37, §§ 46, 47, at 90–91 (1962). Had the transaction expressly been one in which the Assured described the activities and then asked the underwriter to insure the risk, the Insurer would clearly have been liable had the underwriter stated 'You are covered'."

■ As we view it, appellant in making the appointment of Glass as its statutory local recording agent at DeKalb, Texas, placed the mantle of authority upon Glass' shoulders and "in effect, held him out to the public as an agent authorized to 'write, sign, execute and deliver policies of insurance, *and to bind the company on insurance risks'*", as stated in Shaller, supra, quoting from cases cited therein. And as stated in Shaller, with quotations from cases cited therein, it is clear that Glass under his appointment "had the authority to speak for and act for the company, and to transact all the insurance business of the company which it was authorized to transact under its permit from the state". Also, Art. 21.14, Sec. 2, Texas Insurance Code specifically provides authority for a local recording agent to *"perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public"*.

We think that Glass, as local recording agent of appellant, in performing customary duties in the usual course of his business, was authorized to divulge either to Don Harrison Chevrolet Company, the employer, or to appellee Hutchinson, the injured employee, the name of the insurance carrier whom he had orally bound for workmen's compensation insurance. He did divulge the name of the carrier to Harrison, and Harrison's employees, prior to the injury, but the name of the carrier was not remembered by Harrison and his employees. Glass divulged the name of the appellant as

the carrier of such coverage to Hutchinson shortly after Hutchinson was injured, and started paying Hutchinson compensation by drafts bearing the name of appellant in the manner hereinbefore indicated. The record also indicates that Glass also made other statements which strongly point to appellant as the insurance carrier whom he orally bound for workmen' compensation insurance coverage.

■ We hold that under the unusual circumstances and facts in this case and under the authorities hereinbefore referred to, that the trial court did not err in admitting the evidence complained of by appellant's points 1 and 2. Appellant's points 1 and 2 are overruled.

We also hold that the trial court did not err in overruling appellant's motion for directed verdict and appellant's motion for judgment non obstante veredicto. We further hold that there was evidence of probative force, which was amply sufficient to support findings, to the effect that appellant had issued an oral binder (through its local recording agent, Glass) for workmen's compensation insurance coverage to appellee's employer effective and to be effective, at and prior to the date of the alleged injury. We also hold that such findings are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Appellant raises several points with respect to the question of estoppel. Appellee in his brief states that he does not rely upon estoppel to create an insurance contract between the employer and the appellant. Appellee contends that the insurance contract was created by the oral binder of appellant by its local recording agent. We agree with appellee that the insurance contract in question was validly created by the oral binder in question and therefore deem it unnecessary to write upon questions regarding estoppel or waiver.

We also hold that there was evidence of probative force to support the jury's find-

ing in response to Special Issue No. 4 to the effect that appellee's total disability has been and will be permanent, and that there was amply sufficient evidence to support such finding.

Also after carefully considering the entire record in this cause in the light of the rules announced in the case of In Re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952), it is our further holding that the jury's finding in response to Special Issue No. 4, to the effect that appellee's total disability has been and will be permanent, is not so contrary to the great and overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

All of appellant's points have been considered. None of them are deemed as presenting reversible error under the record in this case.

We hold that the trial court entered a correct judgment under the record in this cause.

The judgment of the trial court is affirmed.