COMMONWEALTH COUNTY MUTUAL INSURANCE COMPANY, Appellant,

v.

Albert Daniel BURCH, Appellee.

No. 7053.

Court of Civil Appeals of Texas.

Beaumont.

April 3, 1969.

Orgain, Bell & Tucker, Beaumont, for appellant.

Earl B. Stover and Lee Roger Ratliff, Silsbee, for appellee.

PARKER, Chief Justice.

Commonwealth County Mutual Insurance Company sued Albert Daniel Burch for a declaratory judgment to cancel or rescind an automobile insurance policy, tendering and depositing into the registry of the court the insurance premium charged, i. e. $173.00, alleging there was a loss prior to the time the policy was in fact issued. Burch filed a cross-action to recover under the policy, alleging in his verified pleading the market value of the automobile before the collision was $2,100.00, with no market value after the collision. Each filed a Motion for Summary Judgment. The court overruled Commonwealth's Motion for Summary Judgment, and granted Burch's Motion for Summary Judgment. Commonwealth has appealed. The insurance company will be called Commonwealth or appellant. Burch will be called Burch or appellee.

Appellant's Points of Error are:

*"Point of Error No. 1*

"The Trial Court erred in granting Appellee's Motion for Summary Judgment, holding that the policy insured against a loss which occurred prior to the time the policy was issued.

*"Point of Error No. 2*

"The Trial Court erred in overruling Appellant's Motion for Summary Judgment, failing to hold that an insurance policy is not effective to cover a loss which occurred prior to the time the policy was issued.

*"Point of Error No. 3*

"The Trial Court erred in holding that an insurance policy issued after loss is sustained covers such prior loss."

All points of error are considered together.

Ideal Insurance Agency issued Commonwealth County Mutual Insurance Company's family automobile policy dated July 19, 1967, to Albert Daniel Burch, with a pre-dated policy period of 12:01 a.m., July 18, 1967, to July 18, 1968, providing limits of liability coverage of $10,000.00, per person and $20,000.00 per occurrence, and further providing for collision coverage on the automobile owned by Burch. Prior to the time the policy was issued, Burch had been involved in an automobile accident on July 18, 1967.

On July 18, 1967, at approximately 6:00 p.m., Burch met Bobby Hardin in Buna and told him that he wanted insurance on his automobile with a $50.00 or $100.00 deductible. Burch was in his automobile. It existed. Prior thereto, Burch had placed with Hardin liability policies of insurance on one of his automobiles, which policy was issued by the Farmer's Insurance Company. On July 18, 1967, Hardin told Burch he was covered, figured the amount of the premium and Burch gave him a check. Application for insurance was signed by Burch, with no statement and no agreement as to which company would write the insurance, either verbally or in writing. Burch knew Hardin worked for Farmer's Insurance Company, but did not know what other companies Hardin worked for. Shortly after midnight, of July 18, 1967, Burch was involved in an accident with extensive damage to his automobile, the damages being stipulated by the parties to be $1,900.00. Thereafter, Burch told Hardin of the accident. Burch dealt with no one except Hardin.

The policy shows the insurance agent to be the Ideal Insurance Agency of Kirby-

ville, Texas, with the policy being signed by Jack Barron as the representative of the agent. It was not until July 19, 1967, but after the automobile was damaged, that Hardin went to Kirbyville, taking to Jack Barron, a co-owner of Ideal Insurance Agency, the signed application for insurance to cover Burch. Hardin stated he did not think that Farmer's Insurance Company would accept the risk and asked Barron to write the policy. At that time, neither Hardin nor Barron knew that Burch and the automobile had been involved in an accident the night before. Barron figured Commonwealth County Mutual Company's rates, and wrote at the top of the application "Commonwealth". The policy was then typed with the policy period above mentioned, and dated July 19, 1967. Commonwealth did not accept the application until after the loss occurred, and without knowledge of the loss. Burch's check for premiums was received by Ideal Insurance Company on July 19, 1967. Ideal Insurance Agency had a contract with Commonwealth, being a general agent for it. Barron, as general agent for Ideal Insurance Company, had authority to issue lawful insurance policies for and on behalf of Commonwealth. However, neither Commonwealth nor Ideal Insurance Agency had a contract, either written or verbal, with Hardin. The sole insurance license to Hardin was through Farmer's Insurance Company. Ideal Insurance Agency wrote no contracts of insurance for Farmer's Insurance Company. Hardin never had authority to bind Ideal Insurance Agency or any of its companies. Ideal Insurance Agency occasionally brokered business for Hardin, having placed one or two fire policies and automobile policies for Hardin. In each instance, the applications brought in by Hardin were handled on a case by case basis, with no agreement with respect to any future applicants.

It is undisputed that neither Hardin, Barron, Ideal Insurance Agency, nor Commonwealth County Mutual Insurance Company, knew that a loss had already occurred at the time the policy was issued. The only agreement prior to the accident participated in by Burch was the agreement between Burch and Hardin. Hardin had no authority to act for and on behalf of Commonwealth. Hardin is not a party to the suit and any recourse Burch has against Hardin is not before this court.

Under the facts, the subject matter of the risk did not exist and was not in being at the time the policy was issued. Chance of loss was precluded by the pre-occurring accident. There was no insurance policy in existence at the time of the loss. At the time of the issuance of the policy, there was no risk and no basis for a valid contract.

"Texas has held, however, that property in esse and chance of loss are necessary elements of a contract of insurance, and it, together with a few other courts, has held that no valid contract of insurance can be made unless the property is in being at that time." 4 Appleman, Insurance Law and Practice, § 2291, p. 145 (1941).

The above quotation is supported by Alliance Ins. Co. v. Continental Gin Co., 285 S.W. 257 (Tex.Com.App., 1926), where the owner of property destroyed by fire accepted a policy after such property was destroyed, without ever having applied for a policy with Alliance Insurance Company, and knew nothing whatever of the so-called issuance of the Alliance policies and binders. Mallard v. Hardware Indemnity Ins. Co., 216 S.W.2d 263 (San Antonio Tex.Civ. App., 1948, no writ hist.); Trinity Universal Ins. Co. v. Rogers, 215 S.W.2d 349 (Dallas Tex.Civ.App., 1948, no writ hist.); United States Casualty Co. v. Rodriguez, 288 S.W. 487 (San Antonio Tex.Civ.App., 1926, writ ref.); and H. Schumacher Oil Works, Inc. v. Hartford Fire Insurance Company, 239 F.2d 836 (5th Cir., 1965) before Chief Judge Hutcheson and Judges Tuttle and Rives.

The question presented by this record is unlike the factual situation prevailing in either of the cases cited in the dissenting opinion. Ours is not a case wherein the authority of an agent to accept notice of cancellation of a policy was denied as in

Shaller v. Commercial Standard Insurance Company, 158 Tex. 143, 309 S.W.2d 59 (1958). Nor does our case resemble New Hampshire Fire Insurance Company v. Plainsman Elevators, Inc., 371 S.W.2d 68 (Amarillo Tex.Civ.App., 1963, writ ref. n.r.e.) wherein the local agent had been requested to provide *additional* coverage *before* the loss occurred.

■ Instead, the fact structure of this case is ruled by the holding in Bankers Lloyds v. Montgomery, 60 S.W.2d 201, 202 (Tex.Com.App., 1933, judmt. adopted), wherein Judge Sharp said:

> "The courts of this state, as well as the courts of many other jurisdictions, hold that an agent has no authority to issue a policy to cover a known loss * * * [citing many cases] * * *"

The rule has been recognized in Moffett v. Texas Employers' Ins. Ass'n, 217 S.W.2d 142, 144 (El Paso Tex.Civ.App., 1948, no writ):

> "An agent, whether he is merely a soliciting agent or a general agent authorized to write insurance and countersign policies, has no authority to cover a pre-existing loss. United States Casualty Co. v. Rodriguez, Tex.Civ.App., 288 S.W. 487, Wr.Ref.; Bankers Lloyds v. Montgomery, Tex.Com.App., 60 S.W.2d 201."

See also: United States Fire Ins. Co. of New York v. Fife, 6 S.W.2d 211, 215 (Ft. Worth Tex.Civ.App., 1928, writ dism.) and 44 C.J.S. Insurance § 235, p. 990.

■ This case has been fully developed and the evidence is undisputed that before the insurance company or any of its agents ever heard of the plaintiff, the loss had occurred. The plaintiff contends that the insurance company should pay him $1,900.00 for his pre-existing loss and retain plaintiff's $72.00 (the premium charged for the coverage involved herein). This result, being incompatible with Texas law, sound insurance practice, and our sense of fairness is not to be permitted.

All points of error are sustained.

Judgment of the trial court is reversed and judgment rendered for appellant cancelling the insurance policy issued to appellee with appellee recovering his premium. All costs are adjudged against appellee.

STEPHENSON, Justice (dissenting).

I respectfully dissent.

At the outset, it must be kept in mind that this was not an action brought to reform an insurance contract because of mutual mistake. There are no pleadings and no evidence even suggesting that the effective date of the policy was the result of mistake on the part of anyone. It is an action to avoid liability upon a contract of insurance issued by a duly authorized agent, because a loss had occurred before the contract of insurance was issued, but after the effective date of the policy.

It is agreed that no misrepresentation and no fraud is involved and that neither Bobby Hardin, acting for Burch in securing the policy of insurance, nor Barron, acting for Ideal Insurance Agency, had any knowledge of the loss at the time it was agreed the effective date of the insurance policy would be 12:01 a.m., July 18, 1967. It is also agreed that this policy was not actually signed until July 19, 1967, after the loss occurred about midnight, July 18, 1967. In other words, the policy showed on its face that even though it was dated July 19, 1967, that it was the intention of the parties to make the effective date July 18, 1967.

The appellant insurance company relies upon the case, Alliance Ins. Co. v. Continental Gin Co., supra, as supporting its contention that the parties to an insurance contract cannot cover a loss which has already occurred because it is against public policy. I do not think the Commission of Appeals in its opinion passed upon the question facing us in the present case. The facts of that case showed the insurance agent wrote a binder October 19, 1920, and then issued a policy October 20, 1920, and the property was

destroyed by fire October 20, or 21, 1920. The real question for determination was which insurance policies were in effect at the time of the loss, and the court held the other policies had not been cancelled.

The Court of Civil Appeals decisions cited to us by the appellant insurance company do not pass upon the precise question facing us. In both *Trinity Universal Ins. Co. v. Rogers, supra*, and *Mallard v. Hardware Indemnity Ins. Co., supra*, the courts held the insureds had not accepted the renewal policies before the loss. Apparently, the insureds knew of the loss in each case before the attempted acceptance. In *United States Casualty Co. v. Rodriguez, supra*, both the insured and the agent for the insurance company knew of the loss before the policy was issued.

The Supreme Court of Texas lays to rest the question of an agent's authority in *Shaller v. Commercial Standard Insurance Company*, 158 Tex. 143, 309 S.W.2d 59 (1958), in which it is written:

"It is undisputed that Howard Williams was licensed by the State of Texas and duly appointed by respondent as its local recording agent. As such, his authority and the extent thereof was controlled by the provisions of the insurance code and his designation as the type of agent prescribed therein. The purpose of the statute was to vest local recording agents with authority co-extensive with that of the company insofar as writing insurance is concerned and to remove all questions of the local agent's actual or apparent authority from the field of cavil or dispute."

Ideal Insurance Agency had the legal authority to issue this insurance policy, and there is no legal prohibition against pre-dating the policy. No attempt was made to conceal the pre-dating, as the policy shows on its face the effective date and the issuance date.

The case of *New Hampshire Fire Insurance Company v. Plainsman Elevators, Inc.*, 371 S.W.2d 68 (Amarillo Tex.Civ.App., 1963, writ ref. n.r.e.) involved a rider on an insurance policy already in existence. The installation of a drier was completed October 31, 1959, the rider was dated November 25, 1959, and made effective November 1, 1959—the loss was sustained November 6, 1959. The insurance agent testified someone from insured's office called him before November 6, 1959 for the additional coverage and that he collected a premium from November 1, 1959. The court allowed recovery on the policy, and, after quoting the *Shaller* case, supra, said:

"It is stated in 44 C.J.S. Insurance § 266, p. 1070 as follows:

"'The effective date of the policy does not depend on the time of delivery if the parties have agreed on another date, and the policy is effective from the time agreed on, although it is not delivered until after loss. When so stipulated, the policy on delivery may take effect as of a previous date.'"

Assuming this insurance agent, Ideal Insurance Agency, had the authority to predate this policy, in the absence of knowledge of a loss or fraud, it is no answer to say the policy took effect July 18, 1967 at 12:01 a.m., unless there had been a loss before the time of actual issuance. It seems to me it would be against public policy to permit an insurance company to collect an insurance premium for a policy of insurance that would be considered in effect only if there had been no loss. What is the purpose of having an insurance policy in effect if there is no coverage? It is also contrary to the contract made by the parties, evidencing a clear intention that coverage be effective at 12:01 a.m., July 18, 1967.

I would affirm the judgment.